THE PEOPLE, to the use of William P. Jarboe and others, distributees of the estate of P. Jarboe, deceased, Plaintiffs in Error, *v.* ELIJAH LOTT *et al.*, Defendants in Error.

### ERROR TO GREENE.

The sureties upon an administrator's bond, applied to the probate court under the 79th and 80th sections of the statute of wills, to have the administrator give a new bond. The court took two new bonds from the administrator, the penalties of which being added together, equalled in amount the penalty in the old bond. This was held to be a substantial compliance with the statute, which requires that the new bond shall be in the like penalty as the first.

Where a new bond is given by an administrator or executor under the 79th and 80th sections of the statute of wills, the sureties upon the first bond are released from all liability for past as well as for subsequent acts.

If, instead of a new bond being given, the letters should be revoked, the sureties would only be released from future liabilities.

Where administrators have given several bonds, and there is a complication of interests, resulting from the death of one of the administrators and of some of the sureties, whose legal representatives cannot be made parties in a joint action at law upon the bonds, a court of equity will entertain jurisdiction.

The representatives of all of the deceased sureties should be made parties to such a bill.

The 69th section of the statute of wills, in giving an action on an administrator's or executor's bond, against all or any portion of the obligors, has reference only to actions at law, and not to suits in chancery.

The last clause of that section, making certified copies of such bonds evidence, was only designed to change a rule of evidence, and not the practice in courts of equity.

THE plaintiffs filed their bill on the 2nd July, 1858, for settlement of the estate of the deceased, making E. Lott surviving administrator of P. Jarboe, the administrator and administratrix of H. M. Jarboe, deceased, who was the other administrator of P. Jarboe, deceased—Job Collins, surety on first administration bond, A. S. Seely, surety on second administration bond, and F. P. Vedder, surety on third administration bond, defendants, stating that P. Jarboe died intestate 8th February, 1839, naming thirteen distributees of his estate; and that at the time of his death he was in partnership with H. M. Jarboe, as P. Jarboe & Son; that partnership effects survived to him (H. M. J.) as surviving partner, to the amount of several thousand dollars, consisting of merchandise, notes, accounts, and real estate, that the plaintiffs had no means of describing. That H. M. Jarboe, as surviving partner, took possession of the same, neglected the performance of his duty as surviving partner, had not applied the partnership effects to the partnership debts, nor had his representatives after his death. That, on 6th March, 1839, letters of administration were granted to H. M. Jarboe and E. Lott, on their application; and charging breach of the conditions of the administration bonds, in the following particulars:

1st. Had not complied with requirements of sections 95 and 123, statute of wills.

2nd. That they claimed and were allowed improper credits, specifying them, in settlement of 7th August, 1840.

3rd. Also, 23rd August, 1841, in which mistake was made against the estate, of $500, by erroneous subtraction and improper credits allowed, (specifying them).

4th. In settlement, 12th February, 1842, some $6,000 of demands against late partnership (specifying them) were improperly claimed as credits.

5th. That on 6th February, 1844, which was last appearance of the administrators in the County Court, they exhibited their last account and vouchers; that the court suffered the account to be recorded, but wholly disapproved of the same, as amounting to a fraudulent mismanagement and wasting of the estate.

6th. Charging that administrators had not properly accounted.

7th. That administrators had sold real estate for $2,754.25, and had rendered account for only $2,118.30.

8th. That on fair statement of account, there is a balance of $3,000, principal, that ought to be accounted for, with compound interest, because of mal-administration.

People, use, etc., *v.* Lott *et al.*

9th. Claims allowed against the estate, the larger portion of which were on partnership account, which are disallowable on proper statement of account, many of which are not on file in the County Court; and amongst those not on file, one in favor of H. M. Jarboe, August 28th, 1840, for $3,703.51; and one in favor of E. Lott, allowed 25th October, 1839, for $134, charged to be groundless and unjust, no vestige of their having been proven or legally established in the court, and are charged to be disallowable, never having been proven according to law.

The first bond was executed by H. M. Jarboe and E. Lott, as administrators, one John Allen, deceased, and Job Collins, sureties on the same.

Third bond shows that the defendant, F. P. V., and one Henry Griswold, who has since departed this life, were co-sureties. Plaintiffs charge that they have rightfully, and according to the true intent and meaning of section 69, statute of wills, exhibited their bill in this case against defendants in this case, and have right to a decree against them, notwithstanding omissions of B. W. Holliday and representatives of estates of deceased sureties.

With full and specific reference to all and singular the claims referred to, plaintiffs charge that none of them are allowable, due from, or ever have been due from, or are chargeable, or provable or allowable, against the estate in due course of administration, excepting certain specified claims which amount to $2,422.20.

Inventory of effects is given at $5,630.32.

Answer on oath waived. Prayer for reference and statement of account on right principles, and for payment to the plaintiffs, use of, etc., or for such other and further relief as they may be entitled to.

The condition of the first bond is in full legal form; penalty, $5,000.

June 20th, 1842, Job Collins petitioned probate court that administrators be required to give counter security to bear him harmless. Citation issued, returnable 27th June, 1842, when administrators appeared and confessed themselves in fault, and the court adjudged that the security had sufficient cause for uneasiness, and that he was entitled to relief.

" Ordered, therefore, that the said administrators enter into bond in the penal sum of $3,000, with sufficient counter security to bear the said Job Collins harmless," and that bond be executed in ten days. Accordingly, referring to the premises, and with apt condition, the second bond was executed in penalty of $3,000, and filed as "counter security," and recorded;

and it is expressly stated in the record, preliminary to the filing and recording of this bond, that it is "to bear Job Collins harmless, according to an order of the probate justice of the peace, made on the 27th day of June, 1842," and is so approved.

On July 18th, 1842, R. B. Allen, administrator of John Allen, suggested to the probate court that his intestate, in his lifetime, was security for administrators of P. Jarboe, deceased; that they were mismanaging the estate, and filed his petition for relief, praying that they should be required to give bond *de novo*. Citation issued, returnable 23rd July, 1842, when administrators appeared and agreed to give counter security by the 1st of August, 1842, and it was ordered that the penal sum in that bond be $2,000.

Probate office, July 23rd, 1842, widow of intestate filed her petition and complaint against the administrators, praying that their letters be revoked for mal-administration. Citation issued, returnable two days afterwards. Continued to 30th July, 1842, and then to August 15th, 1842.

July 30th, 1842, bond in penalty of $2,000, dated 23rd July, 1842, was executed, conditioned that the administrators had kept and would keep the condition of their first bond— signed by defendant and two securities. Philip Jarboe's counter bond, in case of R. B. Allen, was filed July 30, 1842.

February 6th, 1844, administrators tendered their account, which was utterly disapproved by the court, but was allowed to be recorded, and they were ordered to return into court certain papers that it was supposed they had abstracted, and to state an account as to the interest of intestate in the affairs of P. Jarboe & Son. This they never did.

Defendants in the case, excepting E. Lott, generally demurred to bill, but bill was taken for confessed as to him.

The demurrers were severally overruled and withdrawn, and the parties demurrant asked and were allowed time to answer.

June 2nd, 1860, administrator and administratrix of H. M. Jarboe, deceased, answered, admitting deaths of P. Jarboe and H. M. Jarboe, and administrations, as charged in bill. Say they have no personal knowledge of facts alleged in the bill as to settlement of estate of P. Jarboe, deceased, but charge, on information and belief, that it is indebted to the estate of H. M. Jarboe, deceased; admit partnership of P. Jarboe & Son; say it was hopelessly insolvent; owed $14,000; its means, $2,157.59; that H. M. Jarboe paid, and that there is due to his estate, from that of P. Jarboe, $5,000; don't know whether the administrators gave notice of day for

adjustment of claims against estate, or made settlements annually; insist that court can grant no relief in case for such breaches of condition of bond; insist on validity of settlements in August, 1840 and 1841, admitting error of $500 against the estate.

As to settlement 12th February, 1842, they say that firm of P. Jarboe & Son, at death of P. Jarboe, owed $14,676.66

And means, of firm debts, goods and lands, amounted to only 5,305.34

Which left that concern insolvent $9,371.32

which was paid by H. M. Jarboe, and left a balance of $4,687,66, to be charged to the separate estate of P. Jarboe, and which was so properly charged in said settlement.

Insist that there is no balance due from the administrators to the estate of P. Jarboe, deceased, and that the claims allowed against it, in favor of H. M. Jarboe and E. Lott, were just and legal.

Referring to an exhibit, say, that by that, Wm. P. Jarboe released to the administrators all his interest in the estate of P. Jarboe, for good and sufficient consideration, and rely upon this as a release and in lieu of his claim in this case. And that they find, among papers of the estate of H. M. Jarboe, deceased, a promissory note, dated 29th July, 1835, made by E. Lott and P. Jarboe, for $5,000, at one day's date and twelve per cent. interest, and if unpaid, amounts to about $20,000, and leaves a larger balance against the estate. Respondents asks simple interest on the note, and refer to it as an exhibit.

Allege that a certain paper is a compromise of the administrators of P. Jarboe, deceased, with his widow and certain of his children, and Job Collins, as to a judgment that the administrators had against the widow and Wm. P. Jarboe, as to the dower interest of the widow in the lands of the decedent, and that she and Wm. and Alfred Jarboe and Job Collins, were to withdraw any interference with settlement of estate by administrators. And proceeding instituted against the administrators in probate court, and notice to set aside sale of partnership real estate of P. Jarboe & Son, to be withdrawn, and sale confirmed. And the administrators were to do certain other things. This agreement was dated 15th August, 1842, which was the last day to which Mrs. Jarboe's proceeding against the administrators, in the probate court, was continued. Nothing released in the paper by Wm. P. Jarboe.

The answer, plea and demurrer of F. P. Vedder admits death and intestacy of P. Jarboe, and names of distributees of his estate and administration on estate, as charged in bill. Demurs to first breach of condition of bond alleged in bill; admits $500 error in second settlement, and pleads validity of the various settlements made by the probate court, as having jurisdiction; demurs to allegations of bill as to attempted settlement of February, 1844; denies allegations of bill as to amount of sales of real estate, and inadequacy of account; insists that accounts of Lott, $134, and H. M. Jarboe, $3,703.51, against the estate of P. Jarboe, were just, and properly allowed by the probate court; admits statements of the bill as to the first, second and third bonds, and insists that conditions of second and third bonds were for indemnity and protection of Job Collins and R. B. Allen, administrators of estate of John Allen, and not the persons to whose use this suit is brought; denies that he (respondent) is liable to complainants, use of, etc., on the conditions of his bond, and denies jurisdiction of the court in the premises; demurs to the allegations of the bill as to partnership relations of P. Jarboe & Son, and the liability of H. M. Jarboe, as surviving partner, to account, because these are not proper matters of adjudication in this suit.

The defendants, A. S. Seely and Job Collins, adopt the answers of their co-defendants, as their answer.

Replication to answer filed.

Cross-bill of Job Collins against his co-defendants, Seely and Vedder, filed April 23rd, 1861, says, that he and his said co-defendants are making common cause in the defense of this case, and that if they are entitled to any decree or relief in the case, that before he (Collins) can be rightfully subjected to pay anything by virtue of the condition of his bond, that the liabilities of the defendants, Seely and Vedder, should be severally and respectively exhausted to the amount of the several penalties of their bonds, and prays for such decree, and for rule to answer.

Demurrer to cross-bill filed.

*L. E. Worcester* testifies to the partnership of P. Jarboe & Son at the time of the death of P. Jarboe. Had done business on credit system to considerable amount, and the partnership effects survived to Harvey M. Jarboe and C. Swallow, in spring of 1840; sold lands to H. M. Jarboe, or E. Lott, for a stock of goods that had belonged to the partnership.

Master's report states that he has stated the account on most liberal terms for the defendants, and reports balance to

15th September, 1861, in favor of complainants, to the extent of $4,065.88.

The exceptions of complainants to master's report were taken because of the allowance of any other or further claim or claims, demand or demands, against the estate of intestate, than those admitted in the bill, and because the claims and demands thus allowed and excepted to severally and respectively, have been allowed without sufficient proof of the justice or payment of the same, and without the distributees of said estate ever having had any day in court to allow or contest the same.

Exceptions of Vedder and Seely to master's report show that the master erred in approving of the action of subsequent courts, in disturbing the judgment of the County Court, allowing partnership claims against decedent.

Master erred in not regarding the release of William Jarboe and his mother, in stating said account.

Master erred in refusing to allow claims against the estate, which had been previously allowed by the probate court.

Decree without prejudice to the rights of the parties respectively :

1st.. Overruling, severally, exceptions to the master's report.

2nd. That demurrer be sustained to the cross-bill, and that same be dismissed.

3rd. That bill of complainants be dismissed.

Plaintiffs assign for error the first and third provisions of said decree.

Job Collins assigns for error the second provision of said decree.

In the progress of the case in the court below, the defendants, excepting Lott, severally demurred to the bill, and on argument, as to jurisdiction of the court, parties, and equity of the bill, the court overruled the demurrer, which was withdrawn, and the demurrant parties obtained leave to answer. On the final hearing below, the court suggested lack of proper parties in the case, and dismissed the bill.

D. A. AND T. W. SMITH, for Plaintiffs in Error.

C. D. HODGES, and N. M. KNAPP, for Defendants in Error.

WALKER, J. The first question presented by this record is, what effect was produced upon the rights and liabilities of the parties, by the execution of their additional bonds, by the

administrators? The seventy-ninth section, of the statute of wills, authorizes the security on an administrator's or executor's bond, to file his petition in writing, in the probate court, when he shall believe he is in danger of loss, from the misapplication or waste of the assets of the estate, for a rule on the executor or administrator to give a new bond, or counter security to save him free and harmless, from loss. And the court is authorized on a hearing to dismiss the application, or direct the executor or administrator, in his discretion, either to give good counter security to save such petitioner harmless, or to give a new bond in the like penalty as the first; and that such new bond shall have relation back to the time of granting letters testamentary or of administration, and shall be as effectual in every respect, as if the same had been executed before the letters were granted. And upon refusal or neglect to give bond *de novo,* or counter security, the letters before granted may be revoked. The eightieth section prescribes the form of the condition of such new bond.

In this case, the bonds of the fourth and thirtieth of July, 1842, given under the order of the probate court, on petitions filed for the purpose, conformed in every particular to the requirements of these sections, except that neither were in the same sum as the original. Then was this a fatal omission? It is apparent that the court approving them, must have designed the two new bonds when taken together, to form the amount of the original bond. The sums named in the two, when added together, make that sum. If the two were designed to operate as, and to supersede the former bond, we can see no reason why it should not be held to be a substantial compliance with the law. It can make no difference whether it is written on one or two pieces of paper. The condition of each is the same, and although the sureties became liable in different amounts, still the undertaking is the same. The law regards the substance and not the form of the agreement. If the fact that these bonds were in a less penalty than the one first given rendered them inoperative, they have never become binding, and are not capable of enforcement. But we are of the opinion that they were operative as statutory bonds.

The question then arises as to the effect produced upon the first bond given, by the execution of these. Was that bond abrogated, and the securities released, or did it remain in force? The design of the General Assembly in adopting these provisions, manifestly was to provide the means of enabling a security on such an obligation, when apprehensive of loss, to release himself from liability, or to obtain counter security for

his indemnity. Had the probate court ruled the administrators to give counter security, and they had complied with the order, the obligations would have been executed to the securities, and not to the People. They would have contained very different conditions, and upon a breach of the original bond, and damage resulting to the securities, they alone would have the right of recovery for their indemnity. Or had the administrators failed to give the new bonds when thus required, their letters would have been revoked, and the securities would have been released from all future liability. Then could it have been intended that the giving of such new bonds should have a less beneficial effect, by leaving them liable not only for the past but for the future acts of their principals? We think not.

The statute, in terms, renders the sureties on the new bond liable for all of the acts of the administrators, from the date of the grant of their letters. This seems to clearly manifest an intention to release the securities on the original bond, by the execution of the new one, not only from subsequent, but from all past acts of their principals. And it was the evident design to render the first bond as inoperative as though it had never been given, and to transfer the liability to the new securities. The securities on the bond first given are not liable, and should not have been made parties to this suit.

It is urged, that a bill in chancery will not lie in this case to declare and enforce the rights of the parties. But that the remedy is by an action at law on the bond. Whilst it may be true, that a settlement of the administrators' accounts might be as well adjusted by a jury as a master in chancery, yet there is such a complication of interests, resulting from the death of one of the administrators, and several of the securities, whose representatives cannot be made parties to a joint action on these bonds, that a court of equity may, we have no doubt, entertain jurisdiction of the cause and proceed to a final hearing and decree. In fact, it is difficult to perceive how a court of law could do complete justice, between all of these parties, without great delay and vexatious litigation.

The next question presented is, whether the bill was defective for the want of proper parties. We think it was. The representatives of the deceased securities have a direct interest in being heard in the adjustment of the administrators' accounts, as they would be liable to contribute in their representative character, for their proportion of any sum found remaining in the hands of the administrators, or misapplied or wasted by them. With only a portion of the parties to the bonds, or their representatives before the court, a decree

doing full and complete justice to the several parties could not be rendered. The bill was defective in not making the representatives of Swallow, Seeley and Gregory, parties. Also, in omitting Holliday, a security to the second bond. For the want of these parties, the defendants' demurrer should have been sustained. The sixty-ninth section of the statute of wills, in giving an action on an administrator's or executor's bond, against all or any of the obligors, only has reference to actions at law. That section was not designed to change the practice in suits in equity. And the last clause of that section, making certified copies of such bonds evidence, was only designed to change a rule of evidence, and not the practice in courts of equity. The decree is therefore affirmed.

*Decree affirmed.*