THE PEOPLE, TO THE USE OF WILLIAM P. JARBOE *et al.*,

*v.*

ELIJAH LOTT *et al.*

1. ADMINISTRATOR — *proof required to set aside settlement.* Before a court of equity will set aside as fraudulent or illegal a settlement of his accounts, made by an administrator more than sixteen years before the filing of the bill, and approved by the probate court, it will require clear proof of the alleged fraud or illegality.

2. PRESUMPTIONS. Whatever presumptions are to be indulged, in regard to ancient proceedings relating to the settlement of estates, must be in their

favor, rather than in behalf of parties who have acquiesced in their legality for many years.

3.   ORDERS OF PROBATE COURT — *effect of, as proof.*   The allowance against an estate, of partnership debts, must be considered as at least *prima facie* proof that the firm assets were wholly insufficient for their payment, and the approval by the court of an account showing their payment, as at least *prima facie* proof that the firm assets had been exhausted.

4.   PARTNERSHIP DEBTS — *payment of, by administrator.*   While the individual creditors of an estate can insist on the full payment of their debts, before the partnership creditors can receive anything from the individual assets, yet, as to the heirs, the mere order of payment is a matter of no moment, provided the partnership debts and the individual debts together fairly absorb all the partnership assets and the assets of the estate.

5.   PROBATE JUSTICE.   A probate justice of the peace had no power to review the official acts of his predecessor and set them aside.

6.   PRACTICE.   This court will not notice a deposition introduced into the record, but not read or offered on the hearing, and taken in another case.

APPEAL from the Circuit Court of Greene county ; the Hon. D. M. WOODSON, Judge, presiding.

This was a bill in chancery, filed by the appellants against the appellees, at the July term, 1862, charging fraud against the administrators of Philip Jarboe, deceased, in the settlement of their accounts, and seeking to make liable the heirs of the securities of the administrators, so far as they had inherited property from such securities.   The court rendered a decree for a portion of the sum claimed, and the case was brought, by agreement, to this court, with leave to both parties to assign errors.   Cross-errors were assigned.   The facts are fully set forth in the opinion of the court.

Mr. DAVID A. SMITH, for the Appellants.

Mr. CHARLES D. HODGES, for the Appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court :

. On the 8th of February, 1839, one Philip Jarboe departed this life, and administration upon his estate was committed by the probate court of Greene county, to Elijah Lott, one of the

defendants, and Harvey M. Jarboe, since deceased. Harvey was the son of Philip, and, at the time of the latter's decease, they were partners in the mercantile business. A large amount of indebtedness was allowed against the estate, greatly exceeding the assets. On the 12th of February, 1842, the administrators filed their account, up to that date, in the probate court, and it was duly allowed. This account showed a large balance in their favor. On the 6th of February, 1844, they presented another account, which was disallowed by the court, and an order entered upon the records, stating, as the reason for disallowance, that they had wasted the estate, by paying out of the assets the firm debts of P. Jarboe & Son, when these debts should have been paid with the firm assets. This account, like the other, showed a large balance in favor of the administrators, and was their last appearance in the probate court.

On the 2nd of July, 1858, more than sixteen years after filing the account of February, 1842, which contains the items of which complaint is now made, these complainants, heirs of Philip Jarboe, filed their bill against a portion of the present defendants, charging fraud in the administration. The case came to this court, is reported in 27 Ill. 215, and was dismissed for want of proper parties. In July, 1862, the present bill was filed against the surviving administrator, Lott, who is shown to be wholly insolvent, and against the heirs of Harvey M. Jarboe, and the heirs of his securities on his bond. The bill asks a decree against these defendants, on the ground of mal-administration. Cross-errors are assigned in this court by agreement.

The first remark that suggests itself, on this statement of the case, is, that this is the prosecution of a very ancient claim. The record furnishes no explanation of this, nor is it shown that any of these complainants have been laboring under disability. The defendants, besides denying all equity on the part of the complainants, have set up our sixteen years statute of limitations. In the view we have taken of the case, it is unnecessary to decide how far the analogies of the statute would apply. We allude to the gross *laches* of the complainants in so long neglecting to prosecute their alleged claims, with refer-

ence simply to the proof that should now be required. The acting administrator has long since died. His securities, too, have died, and a decree is now sought against their children, and those of Harvey M. Jarboe. They, of course, can have no knowledge of affairs which occurred nearly a quarter of a century ago; and whatever irregularities may appear on the face of the administration, it would be extremely difficult for them to explain. They were literally the doings of another generation. While this fact also renders it more difficult for the complainants to make out their case, it does not entitle *them* to the benefit of presumptions. Theirs has been the delay, and on them must fall its consequences. Although we may suspect that this administration was not, in all respects, correct, yet we cannot, in any case, make decrees on mere suspicion or conjecture; and, certainly, before we can hold parties who are themselves innocent, liable for the alleged delinquencies of their ancestors, at the suit of persons who have quietly reposed for nearly a score of years upon the wrongs they claim to have suffered, the probate records disclosing, during all that period, the state of the administrators' accounts, we must require proof sufficient to take us from the region of doubt into the "daylight" of established fact. The law favors the vigilant, and whatever presumptions we indulge, must be in behalf of the regularity of transactions of so old a date, and not of persons who have acquiesced in these transactions for a period long enough to have raised an absolute bar, in a court of law, to an action upon a bond or judgment for the payment of money.

There are several facts in this case which are not controverted. The amount of assets with which the administrators were chargeable was $5,240.89. It is admitted that claims were properly allowed against the estate, and paid, to the amount of $3,579.87. For the difference between these two sums, with the interest, the complainants ask a decree. The record shows, however, that besides the claims above referred to, other claims, amounting to between nine and ten thousand dollars, were also allowed by the probate court, and that the

account current of the administrators, filed in 1842, showed a payment of such of these claims as were not in favor of the administrators, which account was approved by the probate court. It is urged, however, by the complainants, that these claims were debts due from the firm of P. Jarboe & Son, that they should not have been allowed against the estate until the firm assets were exhausted, and that, as the administrator was a member of the firm, we must presume that their allowance against the estate was fraudulent.

In *Propst* v. *Meadows*, 13 Ill. 169, this court said, in speaking of the probate court: "When, therefore, it is adjudicating upon the administration of estates, over which it has a general jurisdiction, as liberal intendments will be granted in its favor as would be extended to the proceedings of the Circuit Court, and it is not necessary that all the facts and circumstances, which justify its action, should affirmatively appear upon the face of its proceedings." In *Stone* v. *Wood*, 16 Ill. 179, the court say that the allowance of a claim is a judgment, conclusive as between the parties, until reversed by a superior court, or impeached for fraud, and *prima facie* evidence of the existence of the debt as against the heir. So also it was held in *Bond* v. *Lockwood*, 33 Ill. 212, that the approval, by the County Court, of a guardian's account, was *prima facie* evidence of its correctness.

By these principles then, the allowance against the estate, by the probate court, of these partnership debts, must be considered at least *prima facie* proof that the firm assets were wholly insufficient for their payment, and the approval by the court, of the account filed in 1842, must be considered as *prima facie* proof that said assets had been actually exhausted. This account claimed a credit for the payment of such of the partnership debts as had been allowed. Now, as regards the creditors of an estate, it is of consequence that the partnership debts should not be allowed until the partnership funds are exhausted ; but as regards the heirs, in a proceeding calling the administrator to account, it is of not the slightest consequence when they are allowed or paid, provided the partnership funds

are wholly exhausted before the administration is closed. All that it concerns the heirs to know is, that all the partnership assets were applied as far as they would go, in payment of partnership debts. For instance, in the case at bar : suppose Phillip Jarboe had left an individual estate of three thousand dollars, and had owed individual debts amounting to one thousand dollars. Suppose the partnership assets had amounted to two thousand dollars, and the partnership debts to four thousand dollars. There would then have been a partnership debt of two thousand dollars, which would be entitled to payment out of the assets of the estate, after the individual debts, amounting to one thousand, had been paid. These two debts, together, would have precisely absorbed the assets of the estate, and it is, therefore, perfectly manifest that, while the individual creditors of the estate could insist on the full payment of their debts before the partnership creditors could receive anything, yet, as to the heirs, the order of payment would be a matter of no moment. After the payment by the administrator of two thousand dollars in partnership debts, he would of course have a claim, in behalf of the estate, against the surviving partner, for contribution, but no question of that kind arises upon this record. If the partnership debts and the individual debts, together, fairly absorbed all the partnership assets and the assets of the estate, it is certain that the heirs could make no claim against the administrator or his securities, on the ground of waste or fraud, merely because he was guilty of irregularities as to the order or time of payment. The only question is, were all the assets legitimately applied?

Before, then, these complainants can insist that these partnership debts were improperly paid, as a ground for charging the administrators and their securities, they must rebut all the presumptions which spring from the different orders of the probate court allowing the claims, and allowing credits for their payment, by proof that there were partnership assets which might have been applied in their payment. Without now deciding what would be the effect of this proof alone, it is sufficient to

say that this proof, at least, is indispensable. The record before us is utterly deficient in the necessary evidence on this point.

The only proof offered, on this subject, is to be found in the deposition of Worcester. After speaking of a stock of goods on hand at the time of the death of Philip Jarboe, and belonging to the firm, valued at $1,200, he says, " there was due the concern a large amount, in notes, bonds and accounts, but to what amount I cannot say. I should think it amounted to thousands of dollars. To the best of my knowledge, Harvey M. Jarboe, as surviving partner, collected and settled the business of the firm of Jarboe & Son." He says he knew of no other property. He also says that the goods were traded off in part payment of lands worth $4,000. He does not know how the balance due on the lands was paid. That it was paid, however, is evident from the fact that these same lands were afterwards taken by Mr. Hodges, as attorney for the creditor, Frost, in payment of a firm debt of four thousand dollars, and it is not claimed that it was paid by assets of the estate. This is the sole evidence upon which we are asked to overturn the judgments of the probate court. Unquestionably, it is insufficient. The witness speaks of " thousands of dollars," which he " should think " were due the firm, without naming any sum, or stating that any portion was collectable. If the balance due on the lands, in part payment of which the goods were traded, was paid, as is probable, out of these debts due the firm, that alone would dispose of between two and three of the " thousands of dollars," which Worcester supposes were owing to the firm. These lands were honestly applied in payment of the Frost debt.

We have stated above that the complainants only claim the difference between the assets and the individual debts allowed, this difference being $2,000.52. In order to dispose of the case, it is only necessary to see whether, among the firm debts allowed and reported paid, there are any which, taken together, amount to this sum, and to which no valid objection appears. We lay out of view the Frost debt of $4,000, as being, at least in part, paid by the proceeds of the firm assets. Refusing then

to the administrators any credit on the Frost debt, there are still left, among the claims allowed by the probate court, the following: One in favor of Goddart & Gleason for $640.35, one in favor of Walker & Co. for $1,258.41, one in favor of the administrator, Lott, for $134, and one in favor of the administrator, Harvey M. Jarboe, for $3,703.51. This last claim is for moneys advanced and services rendered to the firm. It is the kind of account which the probate court should have scrutinized very closely, and required to be very strictly proven, before allowing it. It was allowed, however, and we have no right to say that court did not do its duty. The Circuit Court, in decreeing in this case, treated this demand as representing the whole of Harvey M. Jarboe's claim against the firm, and therefore only allowed the defendants for one-half of it in stating the account. Construing it in this mode, the most unfavorable for the defendants, there would still be the sum of $1,851.75, of which they would be entitled to claim the benefit, as a debt allowed against the estate. Besides these, we infer from the record before us that there were other partnership claims allowed. The probate records, however, are not copied into the record made up for this court, and we speak only of such claims as are set out in the master's report. But these claims much more than dispose of the assets remaining after the payment of those debts as to which there is no controversy. These claims are reported by the administrators as paid, and their report was approved. There is nothing in the record before us showing how they were paid. We must therefore presume that the assets of the estate were applied as far as they would go, and we must further presume, from the approval by the probate court, of the administrators' account, that proof was then made of the exhaustion of the partnership assets. This presumption, as we have already stated, is in no way impeached by the evidence contained in the record before us.

We find in the abstract furnished by complainants, the deposition of Elijah Lott, taken in the former case against different defendants. It is improperly introduced into the abstract, as it does not seem, by the record, to have been even offered in evi-

dence on the hearing, and could only have been read by consent. We are not, therefore, at liberty to notice its contents.

As to the order of the probate court, made in 1844, refusing to allow the account then filed, it is only necessary to say that this action of the court cannot be considered as, in any respect, impairing or affecting the force of the orders allowing claims and approving accounts made by the same court in previous years. The then probate justice of the peace did not profess to review the official acts of his predecessor, nor had he any power to do so.

In conclusion, we have only to add what has in substance been already said, that there seem, in this administration, to have been some irregularities in the mode of proceeding, arising from not keeping sufficiently distinct the affairs of the partnership and the affairs of the estate. Thus the Frost debt was allowed against the estate, and it was paid certainly in part, and probably in whole, by means derived from the partnership assets. There may have been fraud in the administration, but we cannot presume it, and it is not proven. The irregularities may be fairly attributed to ignorance, on the part both of the probate court and of the administrators, of the rules of law which should have governed them as to the mere order of procedure. It is probable the administrators knew the partnership was insolvent, and that they proved that fact to the court, and that being proven, it mattered little, practically, at what time, or in what order, the partnership debts were allowed against the estate, so that the individual debts were first paid. In these irregularities there was no injury to these complainants, if the partnership assets were really exhausted. That they were so, is the legitimate presumption from the action of the probate court, and there is no proof in this record by which that presumption is overcome. The decree of the Circuit Court is reversed, and cause remanded at costs of complainants.

*Decree reversed.*