[Department One. — July 27, 1883.]

JEAN F. LACOSTE, RESPONDENT, v. AUG. D. SPLIVALO ET AL., H. BARROILHET AND CATHERINE B. FELTON, EXECUTORS OF JOHN B. FELTON, DECEASED, APPELLANTS.

64    35
105   313
105   444

ADMINISTRATION — LIABILITY OF SURETIES ON ADMINISTRATOR'S BOND. — An administrator's bond given pursuant to an order of the court requiring "further and additional security," is cumulative. The purpose of requiring it is to strengthen the security previously given, and the sureties on such bond are responsible for the faithful execution by the administrator of the duties of his trust without regard to the time of the execution of the bond.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Garber, Thornton & Bishop,* for Appellants.

The defendants are not liable because the devastavit was committed *prior* to the giving of the bond. (*Schloss* v. *White,* 16 Cal. 68 ; *McDonald* v. *Fett,* 49 Cal. 354 ; Civil Code, § 2836 ; *Lowry* v. *State ex rel. Hull,* 64 Ind. 421.)

An examination of the statutory provisions relating to such bonds shows that it was not the intention to impose upon the sureties any liability for the acts of the principal prior to their becoming sureties. (Code Civ. Proc. §§ 1397–1399 ; §§ 1402, 1403, 1404, 1397, 1399, 1400, 1403, 1404, 1390, 1399 ; Pol. Code, §§ 964, 965, 967, 970, 975, 977, 981. See also *Shelton* v. *Cureton,* 3 McCord, 413 ; *State* v. *Hood,* 7 Blackf. 128 ; *Lane* v. *State,* 24 Ind. 421 ; *Alexander* v. *Mercer et al.* 7 Ga. 554 ; *Phillips & Hudson* v. *Brazeal,* 14 Ala. 750 ; *Gottsberger et al.* v. *Taylor et al.* 19 N. Y. 151 ; *Farrar & Brown* v. *The United States,* 5 Peters, 388 ; *U. S.* v. *Eckford's Exrs.* 1 How. 257-263 ; *Bruce* v. *U. S.* 17 How. 442; *U. S.* v. *Girault,* 11 How. 24 ; *Vivian* v. *Otis,* 24 Wis. 520 ; *Bissell* v. *Saxton,* 66 N. Y. 60 ; *Myers* v. *U. S.* 1 McLean, 495.)

*Estee & Boalt,* for Respondent.

What does the statute mean by declaring this bond to be a "further security?" The only rational interpretation is, as the words indicate, a "further security" for what has come into the administrator's hands, or for what may come into his hands. *It is to secure the estate against the loss of the funds of the estate, and not to regulate the receipt of them,* that the bond is made. (*Irwin* v. *Backus,* 25 Cal. 223.)

Ross, J.—Action by the heir of Jean Lacoste, deceased, upon the bond of one of the administrators of his estate. The defendant, Splivalo, was appointed one of the administrators on the 10th day of February, 1870 ; gave the bond then required of

him by the Probate Court, received his letters and thereupon entered upon the discharge of the duties of his trust. In the course of his administration of the estate, Splivalo received large sums of money belonging thereto, and also paid out large sums on account thereof. On the 9th day of July, 1872, he was ordered by the probate judge to give, within five days from that date, " further and additional security in the sum of $50,-000, gold coin of the United States, and that such additional bond be in form required by law, with sureties," to be approved by the judge.

In response to this order the bond in suit was given. After the execution of the bond, and on the 12th of September, 1872, Splivalo was ordered by the Probate Court to file an account of all matters in relation to his administration of the estate occurring subsequent to the filing of his first account, which was in March, 1871. Pursuant to this order for an accounting, Splivalo, on the 20th of September, 1872, filed his account, which was settled by the court on the 13th of November, 1872, after a contest. In settling this account the Probate Court found that the estate was in a condition to be closed, and ordered the account to stand as the final account of the administrator, Splivalo. By the account as thus settled it appeared, and was so adjudged, that there then remained in the hands of Splivalo as administrator, the sum of $36,095.53, subject, however, to the payment of the commissions of the administrators, fixed by the court at $6,421 ; and subject also to the necessary costs of distribution. Subsequently, to wit, on the 22d of November, 1872, the Probate Court made and entered a decree of partial distribution, whereby Splivalo was directed to pay to the plaintiff as heir of the deceased, the sum of $20,000. This money was afterward paid, but the administration of the estate remained pending. At length, and on July 7, 1874, Splivalo rendered an account supplemental to the account which had been settled by the court as his final account. On the credit side of this supplemental account was included the item : " By cash deposited with N. Larco, Esq., and lost by reason of said N. Larco having gone into bankruptcy—No. 88— $11,828.80."

In the settlement of the supplemental account this item was disallowed, and in disallowing it the Probate Court said : "In

May, 1870, Mr. Splivalo, the administrator, had a large amount of money of said estate in the hands of Belloc Freres, bankers, at San Francisco, and he claims to have loaned $10,000 thereof to N. Larco in the August following.  He also claims to have loaned to N. Larco $1,828.80 more, making $11,828.80, for which last named sum he took Larco's note, payable to himself individually, and not as administrator, without interest, to be due sixty days from date.  None of this money has ever been repaid.  In August, 1872, N. Larco became bankrupt, and was so adjudged.  Mr. Splivalo had claims presented against Larco's estate in bankruptcy, wherein he treated the debt and transaction as his own.  The money was not placed with Larco, as with a banker, in the ordinary course of business for security on deposit, but was a loan.  Further, the loss accrued before the rendition of the former account of the administrator, A. D. Splivalo, which was made his final account in and by the decree settling the same, dated November 13, 1872, and in that account and the settlement thereof this money, viz., said sum of $11,828.80, was treated by said administrator, A. D. Splivalo, as cash then in his hands, and was so found and settled.  For the above mentioned and other reasons, appearing sufficient to the court, the said item last above mentioned is disallowed."

The Probate Court proceeded to settle the supplemental account of Splivalo and found that after deducting all credits to which he was entitled, there remained in his hands as administrator the sum of $9,474.08, in money, and entered an order to that effect.  On the 28th of August following, that court made and entered a final decree of distribution by which Splivalo was directed to pay over to the plaintiff as heir of the deceased Lacoste the aforesaid sum of $9,474.08.  This he failed and refused to do, after demand, and hence the present suit on his bond—the bond executed pursuant to the order requiring him to give further and additional security.

The appellants are the executors of one of the sureties on this bond, since deceased, and they contend, first, that the sureties are unaffected by the decree of the Probate Court settling the accounts of the administrator, and by the decree of distribution directing him to pay over to the party entitled thereto the money found to be in his hands; and secondly, that not being bound

by these decrees, the sureties are entitled to show in the present
action, and that in fact the decree of the Probate Court settling
the supplemental account itself shows, that the *devastavit* for
which they are sought to be charged occurred prior to the date
of the execution of the bond on which they became sureties and
on which this action is based, and that this bond bound the
sureties only as to the future and did not in any manner relate
to any property of the estate that had previously come into and
passed out of the hands of the administrator.

Involved in this last proposition is, of course, the further one,
that the facts stated in respect to the loan by Splivalo to Larco
themselves establish a *devastavit* on the part of the administrator.

Entertaining the views we do, it makes no difference which
of appellants' propositions is first considered, but, logically, it
would seem proper first to inquire what was the undertaking of
the sureties. To correctly determine this question, the law
under which the bond was given, and the purpose for which it
was required, must be taken into consideration. As has been
observed, it was given pursuant to an order of the Probate
Court requiring the administrator to give "further and addi-
tional" security. He had long before been appointed, had
given the bond first required of him, had entered upon the dis-
charge of the duties of his trust, had received large sums of
money belonging to the estate, and then he was required by the
court in which the administration of the estate was pending to
give "further and additional" security. By the statute in force
when the bond in suit was executed the Probate Court was, and
indeed yet is by the Code of Civil Procedure, authorized to
require the administrator to give further security in two cases:
(1) upon the petition of any one interested in the estate represent-
ing to the court, or the judge thereof, that the sureties have
become, or are becoming insolvent, or that they have removed,
or are about to remove, from the State or that from any other
cause the bond is insufficient; and (2) when it comes to the
knowledge of the probate judge that the bond of any executor
or administrator is from any cause insufficient, he must, without
any application, cause such executor or administrator to be cited
to appear and show cause why he should not give further secur-
ity. (Hittell, arts. 5776–5781; Code Civ. Proc. §§ 1397–1402.)

We think these provisions of the statute admit of but one interpretation, and that is that the "further security" authorized by them to be required is, and was intended to be, cumulative. The very purpose of requiring it is to strengthen, to increase the security previously existing; and it is obvious that the purpose would fail unless both bonds relate to the same subject-matter. It is perfectly true, as argued by the learned counsel for the appellants, that sureties are entitled to stand upon the precise terms of their contract; but what was their contract? They knew that the party · for whom they were becoming sureties was charged with the execution of a trust; that in its administration he was subject to the lawful orders of the Probate Court; that he had already given one bond as security for the faithful discharge of his duties, among which was the accounting to that court for all property of the estate coming to his hands as administrator; that the court was authorized, when satisfied that the security already given for that purpose was insufficient to require the administrator to give further security for the same purpose, and that the court, in the exercise of the power conferred upon it by the law, had required of the administrator in question such further security; and knowing all this they were willing to become, and did become, *further* sureties that the administrator would faithfully execute the duties of his trust according to law. In the bond that they executed, the fact of Splivalo's appointment as administrator, the fact of the issuance of letters of administration to him, the fact that he had already given one bond for the faithful execution of the duties of his trust; and the fact that he was ordered to file an "additional bond" are expressly recited. To say that when they executed an "additional" bond they did not intend to add to, to increase, to augment the security previously existing is to do violence to the language the parties themselves employed, as well as to contravene the clear purpose of the law under which the order was made requiring the bond to be given.

Counsel are mistaken in referring to section 1403 of the Code of Civil Procedure (which is similar to article 5782 of Hittell), as another instance in which "further security" may be required of the executor or administrator. That and the succeeding section provide for the obtaining by a surety of his release from

responsibility on account of future acts of his principal.  Upon such an application the court or judge is required to cause the executor or administrator to appear at a time and place to be specified, and to give *other* security; and if new sureties be given to the satisfaction of the judge, he may thereupon make an order that the sureties who applied for relief shall not be liable on their bond for any subsequent act, default, or misconduct of the executor or administrator.  So far as these sections bear upon the subject, they strengthen rather than weaken the view we take of the other sections referred to, and of bonds given thereunder.  When the previous security appears insufficient, and something must be added, the statute requires *further* security to be given; when independent security is required, it speaks of *other* security.

There is no doubt that the general rule relating to sureties on official bonds is that they are not liable for any official delinquency or default of their principal occurring prior to the execution of the bond.  Such is the purport of numerous cases cited by counsel for appellants.  But the case in hand is an exception to that rule, and it is an exception because the law under which, and the purpose for which, the representative classes of bonds are given, differs.  This distinction was recognized and enforced by the court of appeals of New York in the case of *Scofield* v. *Churchill*, 72 N. Y. 567, 568, which was an action upon an executor's bond, in which the sureties sought to defend, as the sureties here do, by showing that the funds for which they were sought to be charged had been lost to the estate before the bond in suit was executed.  But the court there overruled the defense and held the sureties liable.  That case is a strong authority in support of the view we take of the contract of the sureties here.

Holding as we do that the sureties on the bond in dispute became responsible for the faithful execution by the administrator of the duties of his trust without regard to the time of the execution of the bond, it becomes unnecessary to determine any other point made for the appellants.

Judgment and order affirmed.

McKEE, J., and McKINSTRY, J., concurred.

Hearing in Bank denied.