FRANK H. GREER AND ROBERT S. REEVES v. J. W. McNEAL, T. B. REDER, J. N. WALLACE, HARRY W. PENTECOST AND T. F. McKENNON, *as Administrator of the Estate of Francis R. McKennon, Deceased.*

(Filed July 16, 1902.)

1. ADMINISTRATOR'S BOND—Sureties. The sureties on an administrator's bond are bound to the extent to which their principal is bound.

2. SAME—Concluded When. The sureties upon an administrator's bond are, in the absence of fraud, concluded by the decree of the probate court duly rendered upon a final settlement and accounting by their principal, as to the amount of the principal's liability, although the sureties on the bond are not parties to the accounting.

3. SAME—Collateral Attack. The sureties on an administrator's bond cannot attack collaterally a judgment of the probate court against the administrator upon a final settlement and accounting by their principal, for whose fidelity to his trust they have obligated themselves.

4. SAME—Liability. As a general rule sureties on the bond of a public officer are not liable for any official delinquency or default of the principal occurring prior to the execution of the bond. But this general rule has no application to an administrator's bond, because the purpose for which an administrator's bond is given is entirely different. The term of office of a public officer is definite and certain, while an administrator has no fixed tenure of office. It is a continuous trust or employment from the date of his appointment until the close of the administration. The condition of an official bond is that the principal shall faithfuly perform the duties of the office to which he has been elected or appointed. The bond of an administrator is that he shall faithfully execute the duties of the trust according to law. Hence the sureties on an administrator's bond, conditioned as the bonds were in this action, are liable for whatever is properly chargeable to the administrator in his official capacity, and it is not essential to prove that the funds or property so chargeable were actually on hand and intact at the time the second or additional bond was executed. If the moneys or property are shown to have come to the hands of the administrator, in his official capacity, and he has not properly disposed or accounted for the same, he is bound to do so on a final settlement, and the

sureties upon his bond, no matter when such bond was executed and approved, are held liable for the faithful performance and execution of such trust.

5. SAME—Breach of. The refusal or neglect of an administrator to obey or comply with the final judgment of the probate court rendered against him constitutes a breach in his bond which provides that he "shall faithfully execute the duties of the trust, as such administrator, according to law,"and renders him liable as well as the sureties thereon for the full amount of said judgment.

(Syllabus by the court.)·

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Lawrence & Huston,* for plaintiffs in error.

*Cotteral & Hornor,* for defendants in error.

On petition for rehearing.　Affirmed.

Opinion of the court by

HAINER, J.:　The statement of facts in the opinion of this court of September 4, 1901, does not correctly state the judgment of the district court. It says: "A judgment for $2,403.33 found to be due, and the liability distributed so that the sureties upon the first administration bond, up to the time of McNeal's release therefrom, were required to pay $1,759.06 and against the remainder of the defendants, including the plaintiffs in error, for $644.27, with interest." The judgment that was rendered by the district court was as follows: That the plaintiff, T. F. McKennon, administrator of the estate of Francis R. McKennon, was entitled to recover from Harry W. Pentecost, as principal, and J. W. McNeal, T. B. Reder, J. N. Wallace, Frank H. Greer and Robert S. Reeves, as sureties, jointly and severally, the sum of $1,759.06, with interest thereon at the rate of seven per cent. per annum from the 27th day of July, 1897. The court further finds that the plaintiff was entitled to recover from the defendants, Harry W. Pentecost, as principal, and T. B. Reder, J. N. Wallace, Frank H.

Greer and Robert S. Reeves, as sureties, jointly and severally, the further and additional sum of $644.27, with interest thereon at the rate of seven per cent. per annum from July 27, 1897, together with costs of the action.    In other words, the court rendered judgment against all the sureties on both bonds for $1,759.06, and an additional judgment against all the sureties except McNeal (who was released by order of the probate court on December 12, 1895, and at the date of the execution of the second or additional bond) for the sum of $644.27, in all the sum of $2,403.33, together with interest at the rate of seven per cent. per annum from July 27, 1897, the date of the judgment rendered againt Pentecost in the probate court.    It appears from the record that on July 27, 1897, upon a full hearing and consideration of the final report of Harry W. Pentecost, late administrator of the estate of Francis R. McKennon deceased, the probate court of Logan county found that there was a balance in the hands of the said Pentecost as administrator and due the estate in the sum of $2,403.-33 for which amount judgment was rendered against the said Pentecost and he was ordered and directed to forthwith pay over said amount to T. F. McKennon and George E. Billingsley, special administrators of said estate, the said sum of $2,403.33 as the money of said estate.    There was no appeal taken from this judgment and hence it was in full force and effect at the time these suits were brought upon the bonds of the late administrator, Harry W. Pentecost.    In this action upon the bonds the plaintiff avers that the said Harry W. Pentecost, late administrator of the estate of Francis R. McKennon, deceased, has not paid over to the said T.  F.  McKennon and George E. Billingsley, special administrators, or to any person or persons for and on behalf of said estate the said sum of $2,403.33, or any part thereof, and that the said

Harry W. Pentecost has in his hands the sum of $2,403.33, the money of said estate, and that he has neglected and refused to comply with the judgment and order of the probate court to pay over said money. We think that the findings and judgment of the probate court were final and conclusive, not only as against Pentecost, as principal on the bonds, but they were also final and conclusive against the sureties thereon.

Judge Woerner in his late work on "The American Law of Administration," section 255, states the general rule as follows:

"The liability of a surety on an administrator's bond is co-extensive with the liability of the principal in the bond. The refusal or neglect of the principal to obey or comply with the judgment or decree of a court of competent jurisdiction constitutes a breach rendering the sureties liable, and they are bound and concluded by such judgment against the principal, unless, of course, there was collusion or fraud between the principal and those who seek satisfaction out of the sureties, which must be established in a direct proceeding.

In *Stovall v. Banks,* 10 Wall. 583, the supreme court of the United States, in passing upon this question, said:

"Sureties in a bond are bound to the full extent to which their principal is bound.

"A surety cannot attack collaterally a decree made against an administrator, for whose fidelity to his trust he has bound himself."

Mr. Justice Strong, in the course of the opinion, used the following language:

"It has been argued on behalf of the defendants in error
—34

that the decree of the superior court, if admitted, would have been only *prima facie* evidence against the sureties in the bond. Were that conceded it would not justify the exclusion of the evidence. But the concession cannot be made. The decree settled that the administrator of the intestate, Alfred Eubanks, held in his hands sums of money belonging to the equitable plaintiffs in this suit, as distributees of the intestate's estate, which he had been ordered to pay over by a court of competent jurisdiction, and the record established his failure to obey the order. Thereby a breach of his administration bond was conclusively shown. Certainly the administrator was concluded. And the sureties in the bond are bound to the full extent to which their principal is bound."

In *Scofield v. Churchill, et al.* 72 N. Y. 565, it was held that in the absence of fraud or collusion between the executor and legatee, the decree of the surrogate was conclusive upon the sureties. Mr. Justice Miller in the course of the opinion said:

"It cannot be denied that a breach of this condition has occurred within the letter of the bond, and the positive undertaking of the sureties has become fixed and operative by the surrogate's decree. In the absenc of fraud or collusion between the executor and the legatee, the decree of the surrogate is conclusive upon the surties. It binds the principal and the sureties alike, and cannot be impeached in a collateral proceeding. While the most solemn judgments do not conclude those who are neither parties nor privies, yet, when an obligee undertakes the payment of a judgment which may be recovered against his principal, he cannot escape the effect of such judgment when recovered.

"He has bound himself to pay, and is indebted for the amount of the judgment when recovered, without regard to its legal merits. Such is the nature of his contract, and he must abide and stand by it, irrespective of the consequences. He

cannot go behind it, or allege that it was erroneous and embraced more than was intended. The decree is final as to the indebtedness of the estate, and the obligation of the executor to pay, and the sureties cannot go back of such judgment. (*Thayer v. Clark,* 4 Abb. Ct. of App. 391, 48 Barb. 243; *The People v. Downing,* 4 Sandf. 189; *Baggot v. Boullger,* 2 Duer. 179.")

In *Deobold v. Opperman,* 19 N. E. 94, the New York court of appeals said:

"The sureties were bound by the surrogates decree reversing the order of discharge, though not parties threto, in the absence of collusion between the administratrix and the distributees or creditors of the estate."

In *Keuck v. Parchen,* 57 Pac. 94, the supreme court of Montana, in passing upon this subject, said:

"A judgment against an administrator in a probate proceeding determining the amount of his indebtedness to the estate is conclusive as against the sureties, and cannot be inquired into collaterally."

And in *Botkin v. Kleinschmidt,* 52 Pac. 563, the same court declared that:

"The sureties on a guardian's bond are bound by a judgment against their principal determining the amount of his indebtedness to the estate, though not parties to such suit." and, "A claim that too much interest was included in a judgment ascertaining the amount of a guardian's indebtedness cannot be inquired into in an action on his bond."

In *Thompson v. Dekum,* 52 Pac. 517, the supreme court of Oregon thus states the rule:

"A judgment against the executor on the final settlement is conclusive on his sureties, in the absence of fraud or collusion."

In *Meyer v. Barth,* 72 N. W. 748, the supreme court of Wisconsin, in a recent case, has decided that:

"Sureties upon a probate bond are, in the absence of fraud, concluded by the decree of the proper court rendered upon an accounting by their principal, as to the amount of the principal's liabiblity, even though the sureties be not parties to the accounting."

The supreme court of Illinois in *Nevitt v. Woodburn,* 43 N. E. 385, states the rule as follows:

"In the absence of fraud or collusion, sureties on administration bonds are bound by adjudications against their principal as to his account with the estate, though not parties thereto."

It must therefore follow that the judgment of the probate court that Pentecost was indebted to the estate in the sum of $2,403.33 on July 27, 1897, was final and conclusive, and could not be collaterally attacked by the sureties in an action upon the administrator's bonds which is the subject of this controversy.

This brings us to the second proposition involved in this case. It is earnestly contended by the learned counsel for plaintiff in error that the sureties on the first administrator's bond were liable for all the defalcations of the administrator until December 12, 1895, to-wit, the sum of $1,759.06, when McNeal, who was one of the sureties on the first bond, was released, and that the sureties on the second bond including the plaintiffs in error were not liable with the sureties on the first bond for the sum of $1,759.06, but were only liable for the defalcations of the administrator from the time the second bond went into effect, December 12, 1895, which defalcations amounted to $644.27. And it is contended that the second or

additional bond given by Pentecost and his sureties on December 12, 1895, was prospective in its terms and not retroactive. and hence the plaintiffs in error, Greer and Reeves, are not liable for any defalcations of Pentecost prior to said date.   The condition of the bond, as provided by section 1248 of our Statutes, is as follows: "That the executor or administrator shall faithfully execute the duties of the trust according to law." The conditions in the bonds in these actions are in the exact language of the statute.   They read:   "If the above bounden Harry W. Pentecost shall faithfully execute the duties of the trust as such administrator according to law, then this obligation to be null and void, otherwise, to be and remain in full force and effect."   The duties and obligations resting upon an administrator are plain and mandatory.   It provides that he "shall faithfully execute the duties of the trust according to law."   It is self-evident that one of the most important duties devolving upon an administrator is to promptly pay over to the proper persons all money in his hands belonging to the estate when ordered so to do by the court, in order that the funds arising from the estate may be properly distributed by the court.   And hence, where an administrator is removed from office, as in this case, for malfeasance, it is his duty to promptly pay over the money of the estate to those who are duly appointed to succeed him, and in obedience to the order of the court.   In the case at bar the probate court made an order that Pentecost should forthwith pay to his successors the amount of money which his reports and the evidence showed he had in his possession or under his control, and belonging to the estate.   He failed or refused to comply with this order. This constituted a clear breach of the conditions in the bond. The gist of these actions upon bonds against the principal and sureties thereon is that Pentecost failed or refused to comply

with the judgment and order of the probate court of July 27, 1897. We think that it is wholly immaterial when Pentecost misappropriated or embezzled the funds. In our opinion the moment Pentecost failed or refused to comply with the judgment and order of the probate court he committed a breach in the bond, and rendered the sureties jointly and severally liable for the full amount of said judgment.

Judge Woerner, in his work on "The American Law of Administration," section 255, p. 548, states the general doctrine as follows:

"It is obvious that the purpose of a new or additional bond ordered by the court *ex mero motu*, or moved by some interested person for the better protection of the estate, or voluntarily given by the principal in anticipation of such an order, is to add the security resulting from the new to that afforded by the old bond. Hence the estate is protected, after the giving of the new bond, by both sets of sureties; those on the first bond remaining, and those on the second bond becoming liable for any breach happening after the new bond is given. Where the condition of the bond is that the principal shall 'account for, pay, and deliver all money and property of said estate,' the sureties on the last bond are liable for the loss following any defalcation, conversion, or *devastavit* committed by the principal, whether before or after the giving of the last bond, because the non-payment after an order by the court having jurisdiction constitutes a distinct breach of bond; the same result follows where the terms of the bond are to 'do and perform all other acts which may be required of him at any time by law'. In such case both sets of sureties are liable: the first, because the conversion or other misconduct leading to the loss of the assets occurred during the time when they were sureties; the last, because the non-payment constituted a breach while they were such."

In *Choate v. Arrington,* 116 Mass. 552, the supreme judicial court of Massachusetts, in an action where the exec-

utor gave a bond with two sureties, conditioned that he should administer according to law the estate of the testator, and render an account, and it appeared that one of the sureties was afterwards discharged by order of the probate court, and a new bond was given with a new surety, and before the execution of the latter bond, property belonging to the testator's estate came to the hands of the executor for which he failed to account, and a suit at law was brought upon the second bond for this breach of its conditions, it was held, that the surety upon the second bond was liable for the full value of the estate not accounted for, and that a surety upon an executor's bond is liable for any default on the part of the executor in not accounting for assets received before as well as after the execution of the bond.

In *Bellinger v. Thompson,* 37 Pac. 716, the supreme court of Oregon, in passing upon this question, held that the sureties on the bond of an executor conditioned for the faithful performance of his duties, are liable for assets misapplied before the execution of the bond. In this case Chief Justice Bean fully discusses this entire subject and distinguishes an administration bond from a bond given by a public officer. In the course of the opinion he said:

"It is next contended that because Ingalls had, prior to the order requiring him to give bonds, paid $2,937.80 on claims against the estate in favor of third persons, and applied the sum of $5,970 on a claim in his own favor, for which he was not allowed credit on final settlement, the sureties on the bond in action are not liable for the money so applied. In other words, the contention for the defendants is that such application was a conversion of the funds belonging to the estate, and that they are only liable on their bonds for assets converted and misapplied after the execution thereof. It is

Greer *et al.* v. McNeal *et al.*

undoubtedly the general rule that sureties on official bonds are only liable for defaults occurring after the commencement of the term of office for which they become responsible, and such is the purport of the authorities cited by defendants. But this rule has no application to an administrator's or executor's bond, because the law under which and the purpose for which they are given are different. There are no terms of office of an executor or administrator. It is a continuous employment from the date of appointment until the close of the administration. If, during such time an administrator or executor should for any sufficient reason give a bond, he would not thereby be entitled to a new commitment of the estate to his hands, nor would it result in any settlement or rest in his accounts. And again, the condition of an official bond is that the principal shall faithfully perform the duties of the office to which he had been elected or appointed; and it would be unwarranted construction of the terms of such bond to hold the sureties liable for any default occurring prior to the commencement of the term, but an administrator's or executor's bond is conditioned 'that he shall faithfully performed the duties of his trust according to law.' (Hill's Ann. Laws, sec. 1088.) A failure to pay over to the heir or legatee the amount ascertained on final settlement to be due such heir or legatee, and ordered paid to him, is a breach, of such bond and conditions, (*Gerould v. Wilson*, 81 N. Y. 573); and the sureties thereon at the time of such breach are liable for such default, no matter when the bond may have been executed, or when the funds were actually misapplied or lost to the estate. The executor or administrator, from the moment he becomes such, is entitled to the possession and control of all the property of the estate, but he is not required to pay or account for any money or property coming into his possession until ordered to

do so by the county court. In every case, therefore, where a bond is given by an executor during the progress of administration, the sureties assume liability thereunder, upon the assumption that he is in possession at the time the bond is given of all the assets of the estate which have been received by him and are unaccounted for, and they in effect agree that he will execute his trust by faithfully administering upon and accounting for such assets. The bond is security against a breach of duty, and there is no such breach until there is a failure to account or pay over the money as ordered by the county court. (Schouler, Ex'rs, sec. 148; 1 Woerner Adm'n, sec. 255; *Schofield v. Churchill,* 72 N. Y. 565; *Lacosta v. Splivalo,* 64 Cal. 35, 30 Pac. 571; *Pinkstaff v. People,* 59 Ill. 148; *Choate v. Arrington,* 116 Mass. 552; *Foster v. Wise,* 46 Ohio St. 20, 16 N. E. 687; *Dugger v. Wright,* 51 Ark. 232, 11 S. W. 213; *Brown v. State,* 23 Kan. 235; *State v. Creusbauer,* 68 Mo. 254; *Beard v. Roth,* 35 Fed. 397.)

"*Pinkstaff v. People, supra,* was an action upon an administrator's second bond, in the trial of which the sureties sought to defend, as the sureties do here, on the ground that the assets came into the hands of the administrator, and were misapplied before the bond was executed; but Chief Justice Lawrence, speaking for the court, said: 'Conceding the sureties upon the bond are liable only for breaches occurring after its execution, the breach in the present case is of that character. Even if the money due the heirs had been, as averred in the plea, appropriated by the administrator to his own use before the bond was given, yet, for such misapplication of funds he would be liable only for nominal damages, if able and willing to pay the heirs whatever might be due them on final settlement. The gravamen of this action is, not that the administrator had confounded the trust funds with his own, and appropriated them to his own use, but that he did not respond to the demands of the guardian. Whether he had

in fact used the trust funds or not, when this bond was given, they were in the eyes of the law, then in his hands to be administered, and the bond was given as security that they should be so administered. But for this new bond he probably would then have been removed, and the heirs and creditors would have had their recourse upon the first bond. By the additional bond he was kept in office, the securities thereon undertaking that he would duly administer all unadministered assets. The bond can have no other rational construction, and such must have been the intention of the parties. He then stood chargeable with certain assets. For the purposes for which this bond was given they were in his hands. The securities undertook that he would pay them over to the persons entitled to receive them, when duly called upon. This he has not done, and hence the liability of these defendants.' And in *Brown v. State, supra,* it is said that the liability of an administrator to an estate for property he has received and converted to his own use is 'assets in his hands belonging to the estate,' which it is his duty to make available, and to account for on final settlement. In *Dugger v. Wright, supra,* it was held that although the executor had converted the funds of the estate prior to the execution of the bond, it was still his duty to account to the probate court therefor, and, when he failed to comply with the order of the court directing him to pay over the amount with which he had been charged on that account, the sureties on the bond were liable, by the terms of of the undertaking, to make good the default. A surety on an administrator's or executor's bond, conditioned as the bonds in action are, is liable for whatever is properly chargeable to the executor in his official capacity; and it is not necessary to show that the funds or property so chargeable were actually on hand, intact or in specie, at the time the bond was executed. If they are shown to have come into the hands of the executor in his official capacity, and he has not properly disposed of or accounted for them, he is bound to do so on final settlement; and the sureties upon his bond, whenever given, are held for the faithful performance of that duty * * * * * * *.''

The state of California has a statute that is similar to ours in requiring an administrator to give further and additional security for the faithful execution of his trust. The ˜upreme court of that state in the case of *Lacoste v. Splivalo,* 64 Cal. 35, 30 Pac. 571, held that the effect of their code which provides that, in case of the insufficiency of an administrator's bond, he may be required to give further and additional security, is to render the sureties in the new bond liable for a *devastavit* by the administrator, occurring before their obligation. In the course of the opinion the court said:

"We think these provisions of the statute admit of but one interpretation, and that is that the 'further security' authorized by them to be required is, and was intended to be cumulative. The very purpose of requiring it is to strengthen, to increase the security previously existing; and it is obvious that the purpose would fail unless both bonds relate to the same subject-matter. It is perfectly true, as argued by the learned counsel for the appellants, that sureties are entitled to stand upon the precise terms of their contract; but what was their contract? They knew that the party for whom they were becoming sureties was charged with the execution of a trust; that in its administration he was subject to the lawful orders of the probate court; that he had already given one bond as security for the faithful discharge of his duties, among which was the accounting to that court for all property of the estate coming to his hands as administrator; that the court was authorized, when satisfied that the security already given for that purpose was insufficient, to require the administrator to give further security for the same purpose, and that the court, in the exercise of the power conferred upon it by the law, had required of the administrator in question such further security; and knowing all this they were willing to become, and did become, further sureties that the administrator would faithfully execute the duties of his trust according to law. In the bond that they executed, the fact of Splivalo's appointment as administrator, the fact of the issu-

ance of letters of administration to him, the fact that he had already given one bond for the faithful execution of the duties of his trust, and the fact that he was ordered to file an 'additional bond' are expressly recited. To say that when they executed an 'additional' bond they did not intend to add to, to increase, to augment, the security previously existing, is to do violence to the language the parties themselves employed, as well as to contravene the clear purpose of the law under which the order was made requiring the bond to be given. Counsel are mistaken in referring to section 1402 of the Code of Civil Procedure, (which is similar to article 5782, Hitt. Code,) as another instance in which 'further security' may be required of the executor or administrator. That and the succeeding sections provide for the obtaining by a surety of his release from responsibility on account of future acts of his principal. Upon such an application the court or judge is required to cause the executor or administrator to appear at a time or place to be specified, and to give other security; and, if new securities be given to the satisfaction of the judge, he may thereupon make an order that the sureties who applied for relief shall not be liable on their bond for any subsequent act, default or misconduct of the executor or administrator. So far as these sections bear upon the subject, they strengthen rather than weaken, the view we take of the other sections referred to, and of bonds given thereunder, when the previous security appears insufficient, and something must be added, the statute requires further security to be given; when independent security is required, it speaks of other security.

"There is no doubt that the general rule relating to sureties on official bonds is that they are not liable for any official delinquency or default of their principal occurring prior to the execution of the bond. Such is the purport of numerous cases cited by counsel for appellants. But the case in hand is an exception to that rule, and is an exception because the law under which, and the purpose for which, the representative classes of bonds are given, differs. This distinction was recognized and enforced by the court of appeals of New York in the case of *Schofield v. Churchill,* 72

N. Y. 567, 568, which was an action upon an executor's bond, in which the sureties sought to defend, as the sureties here do, by showing that the funds for which they were sought to be charged had been lost to the estate before the bond in suit was executed. But the court there overruled the defense, and held the sureties liable. That case is a strong authority in support of the view we take of the contract of the sureties here. Holding, as we do, that the sureties on the bond in dispute became responsible for the faithful execution by the administrator of the duties of his trust, without regard to the time of the execution of the bond, it becomes unnecessary to determine any other point made for the appellants."

We think that these authorities are clearly in point, and are decisive of the case under consideration. We have examined the authorities cited by counsel for plaintiff in error in support of their contention in this case. We have no criticism to make as to the law announced in those cases, but, in our opinion, they do not apply to the case at bar. The distinction between a bond given by a public officer for the faithful discharge of his duties during his term of office, and that of a bond given by an administrator or executor which provides that he shall faithfully administer his trust according to law, was not considered and made in those cases. It is true that the doctrine is well settled that the liability of the surety is not to extend by implication beyond the terms of his contract, and that the contract or undertaking is to receive a strict interpretation, and not to extend beyond the fair scope of its terms. And this is the doctrine announced by the supreme court of the United States in the case of *United States v. Boyd,* 15 Peters, 187, and also in the case of *Farrer v. United States,* 5 Peters, 373. But the court in these cases had under consideration the interpretation to be placed upon the conditions of an official bond, and not the bond of an executor or

administrator. The case of *County of Mahaska v. Ingalls,* 16 Iowa, 81, cited by counsel in support of its contention, involved construction of the liability of a surety on an official bond, and it was there held that sureties on said bonds were not liable for prior delinquencies of the principal. And the Indiana cases followed the same general rule. In the case of *Thompson v. McGregor,* 81 N. Y. 592, the court had before it the liability of the sureties on a receiver's bond. In this case the condition of the bond was: "If the said Charles B. Riker shall henceforth discharge the duties of his trust as such receiver." The court held, and we think properly, that this bond was not retroactive, but prospective in its terms, and therefore the sureties were relieved from liability.

Nor do we think the cases cited from the federal courts by counsel for plaintiff in error are applicable. These cases involved the liability of sureties on official bonds, and in each case the decision turned upon the language of the federal statute under which the bond was given, and the peculiar wording of the bond.

From a consideration of the foregoing authorities we deduce the following general rules:

1. That the sureties on an administrator's bond are bound to the extent to which their principal is bound.

2. That the sureties upon an administrator's bond are, in the absence of fraud, concluded by the decree of the probate court duly rendered upon a final settlement and accounting by their principal, as to the amount of the principal's liability, although the sureties on the bond are not parties to the accounting.

3. That the sureties on an administrator's bond cannot attack collaterally a judgment of the probate court against the administrator upon a final settlement and accounting by their principal, for whose fidelity to his trust they have obligated themselves.

4. As a general rule sureties on the bond of a public officer are not liable for any official delinquency or default of the principal occurring prior to the execution of the bond. But this general rule has no application to an administrator's bond, because the purpose for which an administrator's bond is given is entirely different. The term of office of a public officer is definite and certain, while an administrator has no fixed tenure of office. It is a continuous trust or employment from the date of his appointment until the close of the administration. The condition of an official bond is that the principal shall faithfully perform the duties of the office to which he has been elected or appointed. The bond of an administrator is that he shall faithfully execute the duties of the trust according to law. Hence, the sureties on an administrator's bond, conditioned as the bonds were in this action, are liable for whatever is properly chargeable to the administrator in his official capacity, and it is not essential to prove that the funds or property so chargeable were actually on hand and intact at the time the second or additional bond was executed. If the moneys or property are shown to have come to the hands of the administrator, in his official capacity, and he has not properly disposed or accounted for the same, he is bound to do so on a final settlement, and the sureties upon his bond, no matter when such bond was executed and approved, are held liable for the faithful preformance and execution of such trust.

5. The refusal or neglect of an administrator to obey or comply with the final judgment of the probate court rendered against him constitutes a breach in his bond, which provides that he "shall faithfully execute the duties of the trust, as such administrator, according to law." And renders him liable as well as the sureties thereon for the full amount of said judgment.

The judgment of the district court of Logan county is, therefore, affirmed.

Burford, C. J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.