Decided March 14; rehearing denied April 18, 1898.

### THOMPSON *v.* DEKUM.

[52 Pac. 517 and 755.]

1. EXECUTORS — LIABILITY OF SURETIES ON SUCCESSIVE BONDS.— The giving of a second or subsequent bond by an executor, pursuant to an order of substitution made solely on his own application, and not under the provisions of sections 1096 and 1097, Hill's Ann. Laws, does not release the sureties on the first or prior bond; they are still liable for the conduct of their principal, the bonds being cumulative: *Bellinger* v. *Thompson*, 26 Or. 320, cited.

2. PRINCIPAL AND SURETY — CONTRIBUTION.— Where successive bonds, with the same penalties, given by an executor for the performance of his duties, are cumulative security, the liabilities of the sureties thereon for contribution are as if all had signed the same bond.

3. CONTRIBUTION BETWEEN SURETIES ON EXECUTORS' BONDS.— The sureties upon one or more of the several bonds of an executor will not be compelled to contribute with the surety on another bond to the payment of an amount charged against the executor for interest on money of the estate loaned to the latter surety.

4. EXECUTORS' ACCOUNTS CONCLUSIVE ON SURETIES.— The final settlement of the accounts of an executor is conclusive on both the executor and his bondsmen, in the absence of fraud, and cannot be attacked in a subsequent suit brought for that purpose by one of such sureties.

5. WAIVER OF OBJECTION NOT MADE IN TRIAL COURT.— The objection that the complaint in an action by a surety on an executor's bond to compel contribution by the other sureties does not aver that the plaintiff has paid the judgment recovered against him cannot be raised for the first time on appeal.

6. EXECUTOR'S FINAL ACCOUNT — RES JUDICATA. — The final adjudication of an executor's accounts by the county court cannot be afterward questioned by the sureties.

From Multnomah: HARTWELL HURLEY, Judge.

Suit by D. P. Thompson, one of the sureties on a bond of Rufus Ingalls, as executor, against the executors of the estate of Frank Dekum, deceased, and other sureties on the same and other like bonds, for contribution, and against C. B. Bellinger, guardian of the minor heirs of the deceased, and others, for a credit

for an overpayment by the executor to the estate. From a decree for plaintiff against the sureties, but in favor of the guardian, plaintiff appeals.

MODIFIED.

For D. P. Thompson there was a brief over the names of *Watson, Beekman & Watson*, with an oral argument by *Mr. Edw. B. Watson.*

For Julius Loewenberg there were briefs over the names of *Paxton, Beach & Simon* and *Cox, Cotton, Teal & Minor*, with an oral argument by *Mr. Lewis B. Cox.*

For W. W. and M. M. Spaulding there was a brief over the names of *Williams, Wood & Linthicum*, and *McDougall, Spencer & Jones*, with an oral argument by *Mr. Geo. H. Williams.*

For C. B. Bellinger, guardian, and Mitchell & Tanner there was a brief over the names of *C. B. Bellinger, in pro per.*, and *Mitchell, Tanner & Mitchell*, with an oral argument by *Mr. Albert H. Tanner.*

MR. JUSTICE BEAN delivered the opinion.

This suit was instituted by D. P. Thompson, a surety on one of the official bonds of Rufus Ingalls, as executor of the estate of Mrs. Esther Holladay, against C. B. Bellinger, guardian of the minor heirs of the deceased, Mitchell & Tanner, attorneys for the executors, and all the sureties on his several bonds, to compel Bellinger to credit the judgment recovered by him in favor of his wards against the plaintiff and defendants Dekum and Spaulding, with $1,480, alleged

to have been overpaid to Mitchell & Tanner, from the funds of the estate, and to have the rights and liabilities of the sureties on the several bonds determined as among themselves, and to compel them to contribute to the payment of the balance due on such judgment as the justice of the case may require.  Ingalls was appointed executor of the estate of Mrs. Holladay in April, 1889, without bonds, and continued so to act until March 27, 1891, when the county court of Multnomah County, on the application of the defendant Bellinger, as guardian, made an order requiring him to give a bond in the sum of $25,000 for the faithful performance of his trust.  On April 13, 1891, in obedience to this order, Ingalls filed his bond in due form, with the defendant Loewenberg as surety, and it was duly approved by the county court.  At the time this bond was executed, Ingalls was absent from the state, and his attorney, in order to induce Loewenberg to become a surety thereon, agreed to, and did, deposit, of the funds belonging to the estate, the sum of $25,000 in the Merchants' National Bank, of which Loewenberg was president, under an agreement that it should be drawn out only upon claims against the estate ordered paid by the county court in due course of administration.  When Ingalls returned to Oregon, a few days later, and learned what had been done in the matter, he was very much dissatisfied with the arrangement, because the funds were tied up so he could not check against them at his pleasure. He thereupon immediately set about securing another bond; and on the twenty-third of the same month, on his application, the county court made an order allow-

ing him to substitute for the Loewenberg bond one
with the plaintiff and Dekum as sureties, and ordered
that the former be canceled and the surety discharged.
On the next day, the $25,000 was withdrawn from
Loewenberg's bank, and $15,000 thereof deposited in
the Commercial National Bank, of which Thompson
was president, and the remaining $10,000 in the Port-
land Savings Bank, of which Dekum was president.
Thereafter, on the fourth day of August following,
upon Ingalls' application, the county court made an
order allowing him to file a third bond with the
defendant Spaulding as surety, as a substitute for the
Thompson and Dekum bond, and releasing the sureties
on the latter from future liability; and thereupon the
balance of the funds of the estate (about $10,133)
was withdrawn from the Commercial National and the
Portland Savings Bank, and $7,000 thereof loaned to
the defendant Spaulding by the executor. The several
bonds referred to were in form the same, each condi-
tioned that Ingalls, as executor, "shall faithfully ex-
ecute the duties of said trust according to law," and
each recited that it was given in pursuance of the
order of the county court of March 27, 1891, requiring
Ingalls to give bonds, and contained no reference to
any other bond.

Upon final accounting, Ingalls was charged with
$560, interest on the money loaned to Spaulding; and
it was adjudged and decreed that there was a balance
in his hands as such executor, including this sum, of
$12,557.09, which he was ordered and directed to pay
over to the defendant Bellinger, as guardian, in default
of which Bellinger sued and recovered judgment for

$11,898.59 against the defendants Thompson, Dekum
and Spaulding on their bonds: *Bellinger* v. *Thompson*,
26 Or. 320 (37 Pac. 714, and 40 Pac. 229).   Included
in this judgment is the sum of $1,833.33, which was
adjudged on final settlement of the estate to be due the
defendants Mitchell & Tanner on a claim for legal
services rendered Mrs. Holladay, and which the exec-
utor was ordered to pay over to the defendant Bellin-
ger in trust for them, and by reason thereof it is
sought by this suit to compel Bellinger to credit on the
judgment recovered by him the sum of $1,480, alleged
to have been overpaid to Mitchell & Tanner by the
executor on another claim against the estate, arising
as follows: They were employed by Mrs. Holladay in
her lifetime to commence and prosecute to final judg-
ment an action against the estate of her deceased hus-
band, upon claims held by her, aggregating a very
large amount, under an express agreement for a con-
tingent fee of 10 per cent. of the amount of the judg-
ment so recovered.   Among the claims held by her at
the time was one in favor of Ingalls for $14,595, which
had been transferred to her by an absolute assign-
ment, but in fact for collection only.   During the
pendency of the action Mrs. Holladay died, and it was
continued in the name of her executor, and finally
resulted in a judgment for the sum of $100,268.
Ingalls paid Mitchell & Tanner the agreed fee of 10
per cent. on the amount thereof from the funds in his
hands as executor, and such payment was approved
by the county court.   Upon the final settlement of his
accounts, Ingalls claimed and was allowed a propor-
tionate share of such judgment, on the ground that his

claim against the estate of Ben Holladay had been assigned to Mrs. Holladay for collection only; but it was ordered that, on account thereof, he should be charged with a proportionate share of the attorney's fee paid by the estate for the recovery of such judgment, amounting to $1,480; and it is this amount which the plaintiff insists should be credited on the judgment recovered by Bellinger against the bondsmen. The court below held that the plaintiff was not entitled to the credit claimed, and that each of the sureties on Ingalls' several bonds was liable for, and should contribute, one fourth of the amount of money necessary to satisfy the judgment in favor of Bellinger, and from this decree the appeal is taken.

The contention for the plaintiff is — first, that the Spaulding bond, being the last in point of time, is, as between the several bonds, the primary security, and that he should, therefore, be compelled to pay the entire judgment; and, second, that, if this is not so, the judgment should be apportioned among the sureties according to the number of bonds, and not *pro rata*, in the ratio of the aggregate number of sureties; and, third, that the judgment should be credited with $1,480 on account of the sum alleged to have been overpaid Mitchell & Tanner. The defendant Loewenberg joins in the first and third contentions, but disagrees with the second, and claims that, if he is liable at all, it is for his *pro rata* share of the judgment; while the defendant Spaulding contends that the decree should be affirmed, except that it should be credited with the amount paid Mitchell & Tanner as claimed by the plaintiff.

1.  In support of the contention that the Spauldin ҫ bond is primarily liable for Ingalls' default, we are cited to the following authorities: 1 Woerner's Administration, § 255; *Field* v. *Pelot,* 1 McMul. Eq. 369; *People* v. *Lott,* 27 Ill. 215; *Bobo* v. *Vaiden,* 20 ·S. C. 271; *Morris* v. *Morris,* 9 Heisk. 814; *Lingle* v. *Cook's Administrators,* 32 Grat. 262; *Hooper* v. *Hooper,* 29 W. Va. 276 (1 S. E. 280). But in the cases referred to the second bonds were given at the request of the sureties on the first, and the decisions are controlled by the statutes under which the proceedings were had, which provide, in substance, that if the sureties on the first bonds conceive themselves in danger, they can petition the court for relief, and that the second bond, given in pursuance of such a petition, either operates to discharge the sureties on the first, or render them only secondarily liable, and the text in Woerner is based on these cases. But they are not in point here, because, as said in *Bellinger* v. *Thompson,* 26 Or. 320 (37 Pac. 714, and 40 Pac. 229), in which substantially the same contention was made, we have no statute of that character in this state. Nor were the subsequent bonds of Thompson and Dekum and Spaulding given in pursuance of the terms of any statute, or an order made on a petition of the surety on the first bond; but in each instance the order of substitution was made solely on the application of the executor himself. It was determined in the Bellinger case that under such circumstances all the orders of the county court substituting one bond for another, or attempting to release the sureties thereon, or to limit their liabilities, were null and void, and that the several bonds

were cumulative security for the faithful performance by Ingalls of his duties as executor; and a failure by him to account for and pay over the amount found due the estate on final settlement, as ordered and directed by the county court, was a breach of the condition of each of the bonds. This being so, all the bonds at the time of the final settlement were in full force, and the rights of the sureties thereon as between themselves are the same as if they had all signed one instrument.

2.   The duty of contribution among sureties results from equitable principles, and not from contract, and hence it exists whether they are bound jointly or severally, by the same or different instruments, and although one did not know the other was bound with him; nor is the order in which they become bound material, or the relative number of sureties on the several different obligations or instruments of any consequence. The only question as to such duty is whether they are in fact sureties for a common principal in relation to one and the same obligation. There is some disagreement in the authorities whether sureties bound by several distinct bonds, with different penalties, must contribute equally to the payment of the common obligation in the ratio of the aggregate number of the sureties, or in proportion to the penalties of their respective bonds. This question is very ably discussed, in the light of the authorities, in 10 Cen. Law Jour. 264; but it does not arise here, because the penalties of the several bonds in suit are the same, and in such case the authorities are quite agreed that the obligation of the sureties, as between themselves,

is as if they were all bound by the same instrument.
These principles will be sufficiently illustrated by ref-
erence to the following authorities: 1 Brandt on Guar-
anty and Suretyship, §§ 256, 258; 1 Story's Equity
Jurisprudence, 493-495; *Deering* v. *Earl of Winchelsea,*
2 Bos. & P. 270 (1 Cox Ch. 318); *Odom* v. *Owen,* 2
Baxt. 446; *Pickens* v. *Miller,* 83 N. C. 543; *Cherry* v.
*Wilson,* 78 N. C. 164; *Harris* v. *Ferguson,* 2 Bailey, 397.
*Cobb* v. *Haynes,* 8 B. Mon. 137; *Ketler* v. *Thompson,* 13
Bush (Ky.), 287; *Norton* v. *Coons,* 3 Denio, 132; *Armi-
tage* v. *Pulver,* 37 N. Y. 494; *Loring* v. *Bacon,* 3 Cush.
465; *Bentley* v. *Harris, Administrator,* 2 Grat. 357;
*Bosley* v. *Taylor,* 5 Dana, 157 (30 Am. Dec. 677);
*Stevens* v. *Tucker,* 87 Ind. 109; *Brooks* v. *Whitmore,* 142
Mass. 399 (8 N. E. 117).

But it is contended that the liabilities of the sure-
ties in the case in hand ought not to be determined
by the rule suggested because Thompson and Dekum
agreed with Loewenberg, at the time their bond was
given, to assume the whole responsibility for Ingalls'
acts as executor and to hold him harmless, and that
Spaulding made a similar agreement with them at the
time his bond was given; but upon this point the
court below found "that there was no agreement or
understanding of any nature between said W. W.
Spaulding and plaintiff herein, and said Dekum or
said Loewenberg, or any of them, that their respective
liabilities on said bonds, or their contribution to or for
each other, shall be other than as fixed by such
bonds"; and this finding is abundantly supported by
the testimony. Indeed, while there is an allegation
to that effect in the complaint, there is no evidence

whatever in the record to sustain it, and there is no pretense that the parties ever had any understanding or agreement or conversation whatever in reference to the matter.

3. Nor do we find any equities in the case entitling one surety to any advantage over the other, except that the amount of Ingalls' defalcation and the consequent liability of his sureties was increased $560 by the charge made against him for interest on the money of the estate loaned to the defendant Spaulding; and it would be manifestly inequitable to compel the other sureties to contribute to the payment of this sum, and, under the doctrine of contribution in equity, they ought not to be required to do so: *Crisfield* v. *Murdock*, 127 N. Y. 315 (27 N. E. 1046); *Eshleman* v. *Bolenius*, 144 Pa. St. 269 (22 Alt. 758).

The remainder of the judgment is largely, if not entirely, on account of waste and misapplication of the assets of the estate, before any of the bonds in question were executed, and the sureties therefore all stand upon an equal footing in relation thereto. Neither has any superior claim in equity over the other, nor would the custody and control of the funds belonging to the estate at the time the bonds were executed have afforded the holder any protection against such liability; and therefore the transfer of such funds from one set of bondsmen to another is of no consequence in determining their liability.

4. Nor, in our opinion, is there any merit in the contention that the judgment debtors ought to be credited with $1,480 upon the judgment on account of money paid Mitchell & Tanner, heretofore referred

to; for, while it was decreed on final settlement that a part of the judgment recovered against the estate of Ben Holladay belonged to Ingalls, yet it clearly appears that the agreement for the attorney's fee was made with Mrs. Holladay in her lifetime, the services rendered to her and her estate, and not to Ingalls personally, and the claim therefor was allowed by the county court in its decree of final settlement, and this decision is conclusive upon Ingalls and his bondsmen: *Bellinger* v. *Thompson*, 26 Or. 320 (37 Pac. 714, and 40 Pac. 229). Upon the final settlement of Ingalls' accounts as executor, the court was required to pass upon and determine the credits to which he was entitled by reason of money already paid out, and the validity of certain unpaid claims against the estate, among which was the claim of Mitchell & Tanner for $1,833.33 for legal services rendered Mrs. Holladay; and, having these matters under consideration, the court decreed that Ingalls was entitled to a credit on his account as executor for all the money paid by him as attorney's fees in the action against the Ben Holladay estate, and, in addition thereto, that Mitchell & Tanner had a valid unpaid claim for $1,833.33; and these adjudications, as already suggested, are binding upon Ingalls and the parties to this suit, and are not open to consideration here.

5. Objection is made to the complaint because it does not aver that plaintiff had paid the judgment recovered by Bellinger against himself, Dekum and Spaulding, to the payment of which he is seeking to compel his co-sureties to contribute. The issues were made up, the evidence taken and decree rendered in

the court below without this question having been
raised or suggested; and, in our opinion, the parties
ought not to be permitted to urge it here.    It is true,
the remedy for contribution between co-sureties is
usually sought after the debt has been paid by one of
them; but Mr. Brandt says that a surety may, before
he has paid the debt, file a bill against his co-surety
to compel him to contribute to its payment: 1 Brandt
on Suretyship, § 275.    But whether this rule is appli-
cable to a case of this sort is immaterial, for the
reasons already suggested.    It follows that the decree
of the court below should be affirmed, except that
Spaulding be required to pay on the judgment re-
covered by Bellinger against himself, Thompson and
Dekum $560 and interest thereon from the date of
such judgment, and that Loewenberg, Thompson,
Dekum and himself pay one fourth of the remainder.

<div style="text-align: right">MODIFIED.</div>

### ON REHEARING.
[ 52 Pac. 755.]

MR. JUSTICE BEAN delivered the opinion.

6.  Counsel for the appellant filed a petition for
rehearing, in which they say that the court erred "in
finding and holding that upon the final settlement of
the accounts of Gen. Rufus Ingalls, as executor of
the estate of Esther Holladay, deceased, the County
Court of Multnomah County 'decreed that Ingalls was
entitled to a credit on his account as executor for all
of the money paid by him as attorney's fees in the
action against the Ben Holladay estate,'" and they

insist that this is a mistake apparent from the record.
Neither Ingalls' final account, nor the decree of the
county court allowing and settling the same, is a part
of the transcript; and our conclusions upon this
branch of the case were based upon the findings of
the trial court, which passed unquestioned on the
hearing here, and the statement made is in accord-
ance with such findings, as we understand them.
Counsel insist that the county court, by its decree, on
final settlement, disallowed the sum of $1,480 on the
claim of Mitchell & Tanner for services rendered in
procuring the judgment against the Holladay estate,
in accordance with their agreement made with Mrs.
Holladay.   But the findings do not sustain this con-
tention.   From these it would seem that no reduction
whatever was made in the amount of the claim of
Mitchell & Tanner, growing out of their contract with
Mrs. Holladay.   It was considered and adjudged to be
a valid claim against the estate, and lawfully paid out
of the assets; but, because Ingalls was allowed a share
of the judgment recovered by them, the court decreed
that he should reimburse the estate for the propor-
tionate share of the attorney's fees paid by it on
account thereof.   And, therefore, it is strictly accurate
to say, as we understand the record, that the county
court, in approving Ingalls' account on final settle-
ment, decreed that he was entitled to a credit for all
the moneys paid by him as attorney's fees in the
action against Ben Holladay's estate.   But, however
this may be, the fact still remains that the county
court adjudged and decreed that there was due and
unpaid to Mitchell & Tanner at the time of the final

settlement the sum of $1,833.33; and this adjudication is binding on Ingalls and his bondsmen, and they cannot be heard, in this proceeding, to say that the court erred in not deducting therefrom the amount which they now claim to have been overpaid Mitchell & Tanner on some other account.

<div align="right">REHEARING DENIED.</div>

<div align="center">

Decided April 11; rehearing denied June 20, 1898.