## SOUTHERN SURETY CO. v. BURNEY *et al.*

### No. 1954.   Opinion Filed September 12, 1912.

#### (126 Pac. 748.)

1.    **GUARDIAN AND WARD—Liabilities on Bonds—Sufficiency of Evidence.**   Evidence examined, and held sufficient to sustain the judgment.

2.    **SAME—Persons Concluded by Decree—Principal and Surety.** Sureties on a guardian's bond are, in the absence of fraud, concluded by the decree of the county court, duly entered on a hearing on an accounting or final settlement, as to the amount of the principal's liability, although the sureties are not parties to the accounting.

3.    **SAME—General and Special Bonds.**   The general bond required of a guardian is intended to secure to the infant the proper accounting for all funds, from whatever source they may be derived, that may come into the hands of the guardian; the special or "sales bond" required by statute is cumulative security, required and given for the benefit of the ward; and a failure on the part of the guardian to account for the proceeds of a sale of real estate will not excuse or absolve his sureties on his original or general guardian's bond.

(Syllabus by Robertson, C.)

*Error from District Court, Bryan County;*
*D. A. Richardson, Judge.*

Action by Clara May Burney, a minor suing in the name of her legal guardian, A. L. Burney, against J. L. Ellington and the Southern Surety Company. Judgment for plaintiff, and the Surety Company brings error.   Affirmed.

*Hatchett & Ferguson* and *J. H. Huckleberry,* for plaintiffs in error.

*Connell & Tyree,* for defendant in error.

Opinion by ROBERTSON, C.   On May 21, 1907, J. L. Ellington was appointed guardian of the person and estate of Clara May Burney, and on the same date gave bond in the sum of $1,500 for the faithful performance of his duties as such

guardian, with L. W. Cruce and Charles P. Abbott as sureties. Thereafter, on the 30th day of January, 1908, said guardian gave what is commonly denominated as a "sales bond" in the sum of $1,000, with the Southern Surety Company of Atoka as surety, to secure the faithful performance of the duties of said guardian relative to the sale of certain real estate belonging to his ward. On February 24, 1908, said guardian gave a regular guardian's bond in the sum of $1,000, with the Southern Surety Company of Atoka as surety, which last-mentioned bond was given in lieu and in place of the first bond, signed by Cruce and Abbott as a general guardian's bond.

The ward, becoming dissatisfied with her guardian's conduct, filed a petition for an accounting, and a citation issued out of the county court, and the guardian was compelled to render an account of his doings as guardian, in the county court, where, after a hearing, an order was entered, finding him indebted to his ward in the sum of $1,570, and directing him to pay said amount at once, and also removing him from his office. An appeal was taken by the guardian to the district court, and the judgment of the county court was affirmed in all things, except the guardian was given a credit of $385 on the amount, and a judgment was thereupon entered in the district court showing the said guardian to be indebted to his ward for money misappropriated in the sum of $1,185. On that judgment the present action is based. At the trial of this cause in the district court, a judgment was entered in favor of the ward and against J. L. Ellington and the Southern Surety Company of Atoka for the full amount prayed for. The surety company filed its motion for new trial, which was overruled and exceptions taken, and it brings this appeal to reverse said judgment, and assigns as error: First. The evidence does not show sufficient facts to support the verdict returned against the defendant, Southern Surety Company of Atoka. Second. The general bond could not be held for the proceeds of the sale of real estate, and the court erred in sustaining a demurrer to that part of defendant's answer.

As to the first question raised by the plaintiff in error, we are satisfied that there is ample, competent evidence to sustain the

verdict as returned by the jury. We find in the record a judgment of the district court of Bryan county, entered prior to the bringing of this action, by which the amount due from the guardian is determined, and which judgment also directs him to pay over that sum to the person entitled to receive the same. The record further discloses that J. L. Ellington, the former guardian of Clara May Burney, had been removed from his office by a judgment of the county court of Bryan county, which had later been affirmed, on appeal, by the district court of said county, and that A. L. Burney had been appointed in his stead, and had qualified as such, and at the time of the bringing of this suit was acting in that capacity; that by virtue of the judgment of the district court ordering Ellington to pay the sum of money found to be due his ward, the said A. L. Burney had made demand on him, also, for the amount found due; and that Ellington refused to pay the same, or any part thereof.

We think this was sufficient evidence to sustain the verdict returned by the jury against the defendant; and a judgment rendered by the county court upon a final accounting by an administrator or guardian is final and conclusive, in the absence of fraud, unless reversed or modified on appeal; and the record shows that in this case the judgment of the county court determining the amount of the defalcation was affirmed by the district court of Bryan county.

In *Greer et al. v. McNeal et al.,* 11 Okla. 519, 69 Pac. 893, our Supreme Court, speaking through Hainer, J., on an identical subject, said:

"We think that the findings and judgment of the probate court were final and conclusive, not only as against Pentecost, as principal on the bonds, but they were also final and conclusive against the sureties thereon. We think it is wholly immaterial when Pentecost misappropriated or embezzled the funds. In our opinion, the moment Pentecost failed or refused to comply with the judgment and order of the probate court he committed a breach in the bond, and rendered the sureties jointly and severally liable for the full amount of said judgment."

And, after a thorough review of all the authorities on this question, the court in that case announced the following rule,

· which we believe to be supported by the great weight of authority:

"That the sureties upon an administrator's bond are, in the absence of fraud, concluded by the decree of the probate court, duly rendered upon a final settlement and accounting by their principal, as to the amount of the principal's liability, although the sureties on the bond are not parties to the accounting."

In *Stovall et al. v. Banks et al.,* 10 Wall. 583, 19 L. Ed. 1036, the Supreme Court of the United States, sustaining a like contention, said:

"It has been argued on behalf of the defendants in error that the decree of the superior court, if admitted, would have been only *prima facie* evidence against the sureties in the bond. Were that conceded, it would not justify the exclusion of the evidence. But the concession cannot be made. The decree settled that the administrator of the intestate, Alfred Eubanks, held in his hands sums of money belonging to the equitable plaintiffs in this suit, as distributees of the intestate's estate, which he had·been ordered to pay over by a court of competent jurisdiction; and the record established his failure to obey the order. Thereby a breach of his administration bond was conclusively shown. Certainly the administrator was concluded. And the sureties in the bond are bound to the full extent to which their principal is bound. A principal in a bond may be liable beyond the stipulations of the instrument, independently of them; but so far as his liability is in consequence of the bond, and by force of its terms, his surety is bound with him. There may be special defenses for a surety arising out of circumstances not existing in this case; but, in their absence, whatever concludes his principal as an obligor concludes him. He cannot attack collaterally a decree made against an administrator for whose fidelity to his trust he has bound himself."

See, also, *Scofield v. Churchill,* 72 N. Y. 565; *Deobold v. Oppermann,* 111 N. Y. 531, 19 N. E. 94, 2 L. R. A. 644, 7 Am. St. Rep. 760; *Kenck v. Parchen,* 22 Mont. 519, 57 Pac. 94, 74 Am. St. Rep. 625; *Botkin v. Kleinschmidt,* 21 Mont. 1, 52 Pac. 563, 69 Am. St. Rep. 641; *Thompson v. Dekum,* 32 Ore. 506, 52 Pac. 517, 755; *Meyer v. Barth,* 97 Wis. 352, 72 N. W. 748, 65 Am. St. Rep. 124; *Nevitt v. Woodburn,* 160 Ill. 203, 43 N. E. 385, 52 Am. St. Rep. 315.

In *Irwin v. Backus,* 25 Cal. 214, 85 Am. Dec. 125, the court, speaking on this question, says:

"As a general rule, sureties upon official bonds are not concluded by a decree or judgment against their principal, unless they have had their day in court, or an opportunity to be heard in their defense; but administration bonds seem to form an exception to this general rule, and the sureties thereon, in respect to their liability for the default of their principal, seem to be classed with such sureties as covenant that their principal shall do a particular act. To this class belong sureties upon bail and appeal bonds, whose liability is fixed by the judgment against their principal. This distinction seems to be founded upon the terms of the obligation into which the sureties upon an administration bond enter, which are that their principal shall faithfully perform all the duties imposed upon him by the nature of his trust, and will account for and pay over all money which may come into his hands, pursuant to the order and decrees of the probate court. The account must be rendered to and settled by the court, and the money must be paid out and distributed by and pursuant to the orders and decrees of the court; and the undertaking of the sureties is that their principal will do all this. * * * They may show in defense, either that the bond was not made, or that the decree was not made, or, if made, that the same has been obeyed, or that the same was obtained by fraud or collusion; but they cannot show that the court has erred in making the decree, or that no assets ever came into the possession of the administrator, although the court has so found and adjudged. If any error has been committed, a remedy is afforded by appeal. Until the order or decree is reversed, it is equally conclusive upon the administrator and his sureties. We think the proceedings of the probate court were admissible, and, in the absence of any fraud or collusion, were conclusive upon the sureties, both as to the *devastivit* and the amount thereof."

See, also, *Roberts v. Weadock,* 98 Wis. 400, 74 N. W. 93.

To be sure, the rule enunciated in the foregoing cases does not apply specifically to guardianship cases; but the principle involved is identical, and controls in this case. However, the books are full of cases sustaining the view that the judgment of the county court on final settlement of a guardian's account is conclusive on all concerned. Thus, in *Brodrib v. Brodrib,* 56 Cal. 563, it is said:

"The settlement and allowance of the final account of a guardian was a matter vested exclusively, by the Constitution and laws, in the probate court; and its judgment in such case cannot be successfully resisted until reversed or modified by some proceeding directly impeaching it; and it is conclusive, not only against the guardian himself, but also against his sureties."

In *Braiden v. Mercer,* 44 Ohio St. 339, 7 N. E. 155, the court, in speaking on this question, said:

"By their bond the sureties contract with reference to the action of a court, and that their principal will obey its orders and conform to such action. Can they say they are strangers to such proceedings? Upon their principal's failure to obey the orders of the court, there is clearly a breach of the bond. The relation they assume to such court and its action so far makes them privy to the proceedings affecting their principal as to deny to them the right, when called upon to answer the breach of the bond, to call in question the grounds upon which the court based its action, and to have the same cause retried."

While the Court of Civil Appeals of the state of Texas, in *Fahey v. Boulmay et al.,* 24 Tex. Civ. App. 279, 59 S. W. 300, said:

"The bond was in all respects sufficient and was properly received in evidence. The county judge was named in it as the obligee, and it appeared to be the bond of the guardian in the estate of the minor children of Isaac Boulmay, deceased. It was not necessary to bring the sureties before the county court by citation in order to make the decree of that court conclusive against them as to the amount due by the guardian. The order of the county court was binding upon the sureties and no further evidence of the amount of their liability was required."

In *Yost et al. v. State,* 80 Ind. 350, we find the following:

"If the evidence of accounting failed to show of which fund the guardian was in default, the condition of each bond was broken to the extent of the defalcation; and the plaintiff was entitled to recover the whole sum of whichever set of bondsmen she should choose to sue, leaving it to be settled between the respective bondsmen themselves, without driving the. plaintiff to two actions, whether there should be a prorating of the burden."

While in *State v. Slauter,* 80 Ind. 597, the court, speaking with reference to such a settlement as in the case at bar, said:

"This settlement and discharge are *res judicata* of all the matters and things therein contained, and cannot be collaterally attacked in a suit upon the bond."

And in *Rice v. Wilson*, 129 Mich. 520, 89 N. W. 336, the court said:

"The judgment rendered by the probate court is conclusive and binding upon them, in the absence of collusion or fraud. The bonds of executors, administrators, and guardians are placed, by the court, upon a different basis from those given by sheriffs, treasurers, etc., for the performance of their duties."

Thus it is seen that the weight of authority holds that sureties, such as the plaintiff in error in the case, are bound by the judgment entered against their principal, notwithstanding the surety was not a party to the suit; and, this being true, the contention urged by counsel for the plaintiff in error, that the evidence in the case does not show facts sufficient to support the verdict, cannot be sustained. On the contrary, the facts amply sustain the verdict.

This brings us to the consideration of the other and more important question, *i. e.*: Is the surety on a substitute bond, for a former general bond, liable for defaults occurring before the execution of the latter? After a careful review of the authorities, we feel warranted in answering the question in the affirmative. It must not be forgotten in this connection that we are dealing with a guardian's bond, as distinguished from the bond given by public officials. There is a marked distinction, recognized by all, between bonds given by public officials and bonds given by administrators, executors, and guardians. Bonds given by the latter are to be classed with appeals and bail bonds. As is well said by counsel for defendant in error:

"The sureties on the bond of a guardian contract with reference to the judgment of a court, and agree that their principal will do what he is ordered to do, when his accounts are settled by that court. Such liability is based upon the obligation of the guardian to make a true account, and to pay over and deliver to the person lawfully entitled to receive the same the moneys and property found due upon his final settlement with the court. It is immaterial when the conversion or misappropriation took place, or from what source the funds in the hands of the guardian were derived. When the settlement is had, the amount of his indebt-

edness adjudged, and the order of the court made, directing him to turn over that amount, there is nothing left for him to do but pay over the amount or appeal; and if such judgment and order become final, and are not obeyed by the guardian, a breach of the bond is effected, and the sureties are liable for the default."

Thus, in *Greer et al. v. McNeal et al., supra,* the court lays down the following rule:

"As a general rule, sureties on the bond of a public officer are not liable for any official delinquency or default of the principal occurring prior to the execution of the bond. But this general rule has no application to an administrator's bond, because the purpose for which an administrator's bond is given is entirely different. The term of office of a public officer is definite and certain, while an administrator has no fixed tenure of office. It is a continuous trust or employment from the date of his appointment until the close of the administration. The condition of an official bond is that the principal shall faithfully perform the duties of the office to which he has been elected or appointed. The bond of an administrator is that he shall faithfully execute the duties of the trust according to law. Hence the sureties on an administrator's bond, conditioned as the bonds were in this action, are liable for whatever is properly chargeable to the administrator in his official capacity; and it is not essential to prove that the funds or property so chargeable were actually on hand and intact at the time the second or additional bond was executed. If the moneys or property are shown to have come to the hands of the administrator in his official capacity, and he has not properly disposed of or accounted for the same, he is bound to do so on a final settlement; and the sureties upon his bond, no matter when such bond was executed and approved, are held liable for the faithful performance and execution of such trust."

So, also, in *State v. Buck,* 63 Ark. 218, 37 S. W. 881.

The general bond given by the guardian in this case contained the following provision:

"The condition of the above obligation is such that, if the above-named J. L. Ellington, who has been appointed by the county court of Bryan county, state of Oklahoma, guardian of Clara May Burney, shall, within three months from the date of this appointment, make a true inventory of all real and personal estate of the ward that shall come into his possession or knowledge and return the same into court, and, second, shall dispose and manage all such estate and effects according to law and for the best interests of the said ward, and shall faithfully discharge

his trust as such guardian, and, third, shall render an account on oath of the property in his hands, including the proceeds of all real estate which may be sold by him and of the management and disposition of such property, within o⌐e year after the date of this appointment, and at such other times as the court shall direct, and, fourth, at the expiration of his trust to settle his accounts with the court or with the said ward, his ward or his legal representatives, and shall and, do pay over and deliver all the estate and effects remaining in his hands or due from him on such settlement to the person or persons who shall be lawfully entitled thereto, then this obligation to be void; otherwise to remain in full force and virtue.

"J. L. Ellington.

"Southern Surety Co. of Atoka, Okla.,
"[Seal.]        By C. C. Hatchett, Atty. in Fact.
"Approved and filed this 24 day of Feb., A. D. 1908.
"Chas. A. Phillips, County Judge."

Section 5479, Comp. Laws 1909, reads as follows:

"Before the order appointing any person guardian under this article takes effect, and before letters issue, the judge must require of such person a bond to the minor, with sufficient sureties, to be approved by the judge, and in such sum as he shall order, conditioned that the guardian will faithfully execute the duties of his trust according to law; and the following conditions shall form and constitute a part of every such bond, without being expressed therein:

"1.   To make an inventory of all the estate, real and personal, of his ward that comes to his possession or knowledge, and to return the same within such time as the judge may order.

"2.   To dispose of and manage the estate according to law and for the best interest of the ward, and faithfully to discharge his trust in relation thereto, and also in relation to the care, custody and education of the ward.

"3.   To render an account on oath of the property, estate and moneys of the ward in his hands, and all proceeds or interests derived therefrom, and of the management and disposition of the same, within three months after his appointment, and at such other times as the court directs; and at the expiration of his trust to settle his accounts with the county judge, or with the ward, if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys and effects remaining in his hands, or due from him on such settlement, to the person who is lawfully entitled thereto.

"Upon filing the bond, duly approved letters of guardianship must issue to the person appointed. In form the letters of guardianship must be substantially the same as letters of administration; and the oath of the guardian must be indorsed thereon that he will perform the duties of his office, as such guardian, according to law."

It is thus evident from a consideration of the provisions of the bond and the statute that it was the intention of the Legislature to provide for the protection of the infant under all circumstances; and that the guardian would be compelled, under his general bond, to pay over all funds that come into his hands as such guardian, no matter from what source the same may come, or when they were received. In this contention we are amply sustained by the great weight of modern authority; and it is no defense to say that the special "sales bond" required by the law exempts the surety on the guardian's general bond from liability for the wrongful acts of the guardian. The special "sales bond" is merely cumulative security given for the benefit of the ward; and, while it is required by statute as a condition precedent to the sale of real estate, yet a failure on his part to account for the proceeds of a sale will not excuse or absolve his sureties on his general bond; and it would make no difference, so far as the sureties on the general bond are concerned, when the defalcation or embezzlement took place, or from what source the amount found due by the county court to the ward from the guardian was derived; and, in fact, it is a matter of no moment whether the guardian ever received any funds as such guardian, because the judgment of the court upon the final settlement is conclusive against the sureties.

The authorities on this question are numerous, and the trend of modern decisions is in support of the judgment of the trial court. Thus, in *Hughes v. Goodale,* 26 Mont. 93, 66 Pac. 702, 91 Am. St. Rep. 410, the Supreme Court of that state, under an identical statute, held:

"To obtain an order to sell, to sell and to account for the avails of the sale ordered is one of the general duties of the guardian. We think the sureties on such bond of the guardian are liable for any loss which the ward may suffer by reason of the guardian's failure faithfully to execute the duties of his

trust, among which are those pertaining to the sale of real estate; and they are consequently liable for his default with respect to the proceeds of such sales. We are of the opinion that the omission of the court to require, and of the guardian to give, the special sale bond in the case at bar was a mere irregularity, in no wise affecting or impairing the jurisdiction of the court which ordered and confirmed the sale. *As has already been said, the general bond of the guardian stands as security for the proper application of the proceeds of the sale."* (Italics ours.)

And the late cases in Kentucky amply sustain this contention, for which see *Barker et al. v. Boyd et al.,* 71 S. W. 528, where it is said:

"The sureties of the guardian's bond, executed in the county court, bind themselves for every class and kind of the ward's estate that may come or should have come to the guardian's hands, including his misfeasances and nonfeasances."

And in *Elbert v. Jacoby,* 8 Bush (Ky.) 545, in discussing this identical question, the court said:

"The object, however, in taking the last bond was to secure the infant, and not to relieve or lessen the liability of the sureties on either bond. The last bond is the additional security required by law, and the liabilities of these sureties on the different bonds, although executed at different times, as between each other, must be made equal so far as the proceeds of the land is concerned. The first bond, viz., the one executed in the county court, embraces a much greater liability than the bond in the circuit court; but so far as the proceeds of the sale of this land are concerned, the sureties on each bond are liable to the same parties for its payment, and a judgment could have been obtained by the infants upon either bond for the full amount realized from the sale."

In *Fay, Judge, v. Taylor et al.,* 11 Metc. (Mass.) 529, it was said:

"This bond, as it will be seen, is special, and limited in its condition; and the more general duty of properly managing the estate of his ward, including the proceeds of real estate sold, and of settling his accounts at the expiration of his trust, and paying over and delivering all the estate and effects to the person lawfully entitled thereto, is secured by his original bond, given upon his appointment as guardian. The Revised Statutes [1836] c. 79, sec. 5, prescribe the conditions of such bonds, among which is distinctly embraced the rendering of an account,

on oath, of the proceeds of all real estate of the ward sold by such guardian. The result of these provisions of the Revised Statutes is that the original bond covers the liability of the guardian as to accounting for, managing, and paying over, the proceeds of real estate sold, etc. The Revised Statutes have materially changed the provisions of law as to guardian's bonds; and, as the bond, which is the subject of the present action, was given since those statutes went into operation, it must be construed in reference to them," etc.

Thus it is seen that the general bond provided by our statute with reference to the guardianship was intended to secure to the infant the proper account for all funds, from whatever source they may be derived, that might come into the hands of the guardian, and, in view of the relationship that exists between the guardian and his ward, it is certainly a just and humane provision, and one that should be upheld by the courts of this state; and it will not be sufficient for a party, under any pretense whatever, to come into court and attempt to escape liability as a surety on a general bond of a guardian under the pretense and plea that the embezzlement of the ward's funds is protected by the special or sales bond required by statute. If the surety on the general bond feels aggrieved because the sureties on the special or sales bond have not been sued, there is an easy way for it to secure relief; for without doubt, if there be any liability, the former may exact contribution from the sureties on the latter bond, or *vice versa,* as the facts may warrant. This much is certain: The surety on the general bond of a guardian is bound for every class and kind of his ward's estate that may or should come into the guardian's hands, including his misfeasances and nonfeasances.

The judgment of the district court of Bryan county should be in all things affirmed.

By the Court: It is so ordered.