## BOUDINOT *et al.* v. LOCUST *et al.*

No. 4926.    Opinion Filed August 3, 1915.

(151 Pac. 579.)

On Motion for Leave to File Second Petition for Rehearing February, 29, 1916.

(155 Pac. 698.)

1.    **EXECUTORS AND ADMINISTRATORS—Administration Bond—Funds Covered.** Where an administrator of the estate of a deceased person petitions the county court having jurisdiction of estate for an order directing certain parties or persons to turn over to him as such administrator certain funds, and the court sustains such petition and enters said order, and the administrator receives and accepts said funds as such administrator, **held,** that neither the administrator nor the sureties on his bond will be permitted thereafter, in a suit against them to recover such funds, to deny that said funds were received by said administrator in his fiduciary capacity, nor will they be permitted in such a proceeding, under such circumstances, to deny that said administrator was legally appointed as such.

2.    **SAME—Sureties—Liability of.** The sureties upon an administrator's bond are, in the absence of fraud, concluded by the decree of the county court, duly rendered upon a final settlement and accounting by their principal, as to the amount of the principal's liability, although the sureties on the bond are not parties to the accounting.

3.    **SAME.** The sureties on an administrator's bond are bound to the extent to which their principal is bound.

(Syllabus by Robberts, C.)

*Error from District Court, Cherokee County;*
*John H. Pitchford, Judge.*

Action by Jackson Locust and others against Frank J. Boudinot and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

On the 29th day of May, 1912, the defendants in error filed, as plaintiffs, their petition in the district court of Cherokee county against the plaintiffs in error, who were

defendants below, upon two certain bonds given by Frank
J. Boudinot as administrator of the estate of James
Locust; the said Boudinot having been appointed such
administrator by the United States Court for the North-
ern District of the Indian Territory on the 13th day of
November, 1905, at which time he gave, as required by the
court, a bond as administrator in the usual form, in the
sum of $650, with the Federal Union Security Company
as surety thereon, and on the 19th day of March, 1908,
he gave an additional bond as such administrator in the
sum of $4,000, with the Southern Surety Company as
surety, the conditions of said bond being as follows:

"The above obligation is such that whereas, on the
19th day of March, 1908, an order was entered by the
county court of Cherokee county, State of Oklahoma,
authorizing the above-named principal, as administrator
of the estate of James Locust, deceased, owing to an
increase in the income derived from said estate in the
nature of royalties from an oil and gas mining lease on
certain lands belonging to said estate, to give an additional
bond in the above-named sum."

It is alleged that the plaintiffs were the only heirs at
law of James Locust; and said petition further alleges:

"That said James Locust departed this life seised and
possessed of no other property than his right to allotment
in the Cherokee Nation; that his allotment was selected
for him by his administrator after his death, and an oil
and gas mining lease on said allotment was executed by
one of the plaintiffs herein, Jackson Locust, the said
Jackson Locust supposing himself to be at that time sole
heir at law of said James Locust, deceased."

It was afterwards found that the other defendants in
error were his heirs, and that Jackson Locust was entitled
to only one-third of the estate, Walker Walker to one-

third, and Joanna Groundhog and Richard Manus were entitled to a one-sixth interest therein; that subsequent to March 21, 1908, there came to the hands of Frank J. Boudinot, as administrator, the sum of $4,161.80; that on the 15th day of October, 1910, a final settlement was had with said administrator by the county court of Cherokee county, the successor of the United States Court, and that it was found that there was due the heirs above mentioned sums as follows:

| | |
|---|---|
| Jackson Locust | $ 815.35 |
| Walker Walker | 1,010.35 |
| Richard Manus | 555.175 |
| Joanna Groundhog | 505.75 |

It is alleged that an appeal from said order was taken to the district court of Cherokee county, and affirmed by that court the 18th day of February, 1911, and that the sureties upon his respective bonds were obligated to said heirs in the amounts above set forth, and the administrator ordered to pay them said amounts, and judgment is asked in said petition for the sum of $2,886.05. The original bond is made Exhibit A to the petition, and the additional bond is made Exhibit B to the petition. The order of the district court, affirming the findings and judgment of the county court of Cherokee county, is made Exhibit C to the petition. The order of the district court, as did the order of the county court, which it affirmed, makes the following findings:

"That said James Locust died seised and possessed of no other property than his right to an allotment in said nation; that his allotment was selected for him by his administrator after his death; that an oil and gas lease upon said allotment was executed by what was then supposed to be his sole heir, Jackson Locust, and that producing wells on said lease were drilled upon said allotment; that all of the money and property that went into

the hands of the administrator were from oil royalties received from the production of oil from said allotment; and that the amounts and dates of Frank J. Boudinot, as administrator of the estate of James Locust, deceased, of the receipts of such royalties, were paid upon the joint receipt of the administrator and Jackson Locust, deceased, at the time and in the amounts as follows:

| | |
|---|---|
| March 21, 1908 | $3,776.09 |
| April 23, 1908 | 168.16 |
| June 23, 1908 | 217.55 |
| Total | $4,161.80 |

Said order further reads:

"That said Frank J. Boudinot is legally chargeable and responsible as the administrator of the estate of James Locust, for the money received by him as royalty for oil produced from the lands allotted to James Locust, deceased."

To this petition, on the 23d day of September, 1912, the Southern Surety Company and the Federal Union Surety Company each filed their demurrer. On September 26, 1912, the court overruled said demurrers, to which ruling of the court the said surety companies excepted. Thereupon, the Southern Surety Company filed its separate answer, which admitted the execution of the bond, and alleged that the said James Locust had no property of any kind or description at the time of his death; that Frank J. Boudinot was appointed administrator for the sole purpose of selecting for his heirs the allotment to which he was entitled as a citizen of the Cherokee Nation; and that no property or assets of any kind ever went into the hands of the said administrator. Said answer specifically denies that the amounts charged in the petition as collected by said Boudinot as administrator were collected or went into his hands as such administrator, and

denies his authority to collect said amounts as such administrator, but alleges that the same, if they went into his hands at all, went into his hands as a private individual, and not in his representative capacity, and that, therefore, the defendant was not liable on its bond for said sum or for any other sum. Said answer sets up specifically, as was also set up in the petition and the findings of the county court, and the affirmance of the district court, that all of the assets and money which went into the hands of Frank J. Boudinot were royalties from a lease made after the selection of the allotment by the heirs. The Federal Surety Company filed an answer identical with that of the Southern Surety Company.

The case was tried before the court on the 26th day of September, 1912. The following evidence was introduced: The original bond of the administrator. Administrator's additional bond. The judgment of the district court of Cherokee county, finally. settling the accounts of the administrator. The original application for letters of administration, in which it is alleged that the value of the estate of James Locust was $325. There was further introduced in evidence, over the objection of the defendants, a petition filed in the county court of Cherokee county, March 16, 1908, by Frank J. Boudinot, administrator, wherein he stated that certain money belonging to said estate, accruing from the sale of oil from a piece of land belonging to said estate, being the allotment, was in the hands of the Indian agent at Muskogee, and praying that the court make an order directing said agent to pay over said money to the administrator of the estate. There was further offered, over the objection of the defendants, the order of the court, made the 19th day of March, 1908, directing the Indian agent to pay over the royalties so ac-

crued and thereafter accruing to Frank J. Boudinot, as administrator of the estate of James Locust; said order showing that said royalties and money "accrued on account of oil lands leased by Jackson Locust, claiming to be the sole heir at law of James Locust." It further alleged that the land upon which said lease was made was the land allotted to James Locust, deceased.

Plaintiffs further offered in evidence, over the objection of the defendants, a letter from the United States Indian superintendent, dated April 27, 1908, and addressed to the county judge of Cherokee county, in which was pending the administration case. This letter recites the order made by the county judge directing him to pay over the money, the amount at that time being $3,944.25. The court is further advised that there are other claimants besides Jackson Locust, and that the funds should be held, so that all of the heirs should share in it; it being asserted, as was alleged in the petition and admitted throughout the case, that James Locust and his heirs were all full-blood Indian citizens of the Cherokee Nation. There was further offered in evidence, over the objection of the defendants, a report filed by Frank J. Boudinot in the county court of Cherokee county on July 13, 1909. This report sets out the amounts received from the Indian agent; that he had filed on an allotment of 80 acres valued by the Commission to the Five Civilized Tribes at $4 per acre, and asking that the balance due should be paid direct to the heirs.

The defendants at the close of the testimony rested their case and the court made certain findings of fact, which were excepted to at the time by the defendants. The court finds, as was alleged in the petition, that Boudinot was appointed administrator the 14th of November, 1905;

that James Locust was entitled to an allotment in the Cherokee Nation, but died before making his selection; that Boudinot gave the bonds as alleged in the petition and admitted in the answer. It further found that there was due from the administrator $2,886.05. The court further finds that Jackson Locust, supposing himself to be the sole heir, executed an oil and gas mining lease on the allotment so selected by the administrator, and that the money that went into the hands of the administrator came from the lease executed by Jackson Locust upon said allotment; that the administrator failed to account for this money after the judgment of the county court and its affirmance by the district court. Upon these findings, judgment was entered as follows:

"And it further appearing to the court that James Locust, the intestate of the defendant Frank J. Boudinot, was at the time of his death entitled to an allotment out of the lands of the Cherokee Nation, and that, after the appointment of Frank J. Boudinot as his administrator, the lands to which said James Locust would have been entitled, if living, were selected by his administrator, and that upon said lands an oil and gas mining lease was afterwards executed, under the supervision and with the approval of the Secretary of the Interior, by Jackson Locust, who at the time supposed himself to be the sole heir of said James Locust, deceased, but that it afterwards developed that there were other heirs entitled to a share of said allotment, and that from said lands there was produced a large amount of oil, and the royalty for the same paid into the hands of the United States Indian agent at Muskogee, and that on the 16th day of March, 1908, Frank J. Boudinot, as administrator of the estate of James Locust, deceased, filed with the county court of Cherokee county a petition praying for an order from the county court authorizing the payment to him as administrator of the moneys in the hands of the Indian agent, and that before granting the

order prayed for the county judge of Cherokee county required an additional bond from the administrator, which bond is the bond executed by the Southern Surety Company herein, dated March 19, 1908, and that thereupon on the 19th day of March, 1908, the county court of Cherokee county ordered said administrator to collect and receive from the United States Indian agent at Muskogee the royalty money so held by the United States Indian agent; that subsequent to March 19, 1908, the said Frank J. Boudinot, under the order of the county court of Cherokee county, collected and received from the United States Indian agent, at Muskogee, as royalties upon the oil produced from said allotment, the sum of $4,161.81; that on the 15th day of October, 1910, the accounts of Frank J. Boudinot as administrator of the estate of James Locust, deceased, were settled by the county court of Cherokee county, State of Oklahoma, and upon the final report of said administrator the county court found the balance against said administrator to be $2,886.05, and the amounts due the respective heirs as follows:

To Jackson Locust the sum of...................$  815.35
To Walker Walker the sum of ................. 1,010.35
To Richard Manus the sum of..................   555.175
To Joanna Groundhog the sum of ...,...........   505.75

"That an appeal was taken from the finding and judgment of the county court of Cherokee county to the district court of Cherokee county, Okla., on the 18th day of February, 1911, which tried and determined the same, and found that Jackson Locust, Walker Walker, Joanna Groundhog, and Richard Manus were full-blood citizens of the Cherokee Nation and entitled to share in the estate of Jackson Locust, deceased, as hereinbefore set forth, and that there was in the hands of Frank J. Boudinot, as administrator of said estate, the sum of $2,886.05, and that out of said sum there was due said heirs the amount set opposite their respective names as follows:

To Jackson Locust the sum of.....:............$  815.35
To Walker Walker the sum of.................. 1.010.35

To Richard Manus the sum of...................... 555.175
To Joanna Groundhog the sum of................... 505.75

—and that Frank J. Boudinot and the sureties upon his bond as administrator of said estate were obliged to said heirs in the amounts above set forth, and adjudged and decreed that said administrator, Frank J. Boudinot, pay off and discharge said several obligations as administrator of said estate to said heirs."

Judgment was rendered against Frank J. Boudinot and Southern Surety Company in the sum of $3,164.05, and against the Federal Union Surety Company in the sum of $650. A motion for new trial was duly made and overruled. From this judgment plaintiffs in error appeal to this court.

*W. W. Hastings* and *Preston C. West,* for plaintiffs in error.

*Wm. T. Hutchings, W. P. Z. German, Robert F. Coll,* and *Geo. O. Wallace,* for defendants in error.

Opinion by ROBBERTS, C. (after stating the facts as above). To obtain a reversal of this case counsel for plaintiffs in error submit the following propositions:

First. "Neither the administrator nor his bondsmen are liable for funds coming into his hands, except in his representative capacity."

Second. "The United States Court had no jurisdiction originally to appoint an administrator of the estate of James Locust."

Third. "There was no law requiring or permitting the giving of the additional bond made by the Southern Surety Company."

In support of the first contention counsel insists that probate or county courts of Oklahoma are invested only with jurisdiction to compel administrators to account for

all the money and assets which belonged to the decedent at the time of his death, and which came into their hands as such administrators; the true test being whether the administrator was entitled to receive the money or property in his capacity as administrator, they insisting that if he is not so entitled, the court has no jurisdiction to require him to account for such funds or property, and any order made so requiring him to account is absolutely void, and his bondsmen cannot be held liable on his bond for such items.

This contention, as a general proposition, might be conceded; but in this case counsel argue from a false position. In the first place, the bond of the Southern Surety Company was given for the express purpose of including this particular fund, and the bond recites the fact that it was given under a special order of the court, "owing to an increase in the income derived from said estate in the nature of royalties from an oil and gas mining lease on certain lands belonging to said estate." By virtue of this bond the administrator was enabled to get possession of the funds in controversy, and by giving the bond the surety company became a party, or at least assisted the administrator to get possession of the funds. Besides, it must be borne in mind that the liability of the administrator has been fixed by the solemn judgment of the court having exclusive jurisdiction of the matter. In that case the judgment roll, which was introduced in evidence herein, recites in substance that on the 16th day of March, 1908, Frank J. Boudinot, as administrator of the estate of James Locust, deceased, petitioned the county court of Cherokee county for an order authorizing him as such administrator to receive the funds involved herein; that upon consideration thereof the court ordered the Indian agent to turn

said funds over to said administrator upon his giving an additional bond in the sum of $4,000; that said bond was given as required, which bond is the bond executed by the Southern Surety Company herein, dated March 19, 1908; that said administrator received said funds, amounting to the sum of $4,161.81; and the court further finds, upon final report of the administrator, that there still remains in his hands, of said funds, the sum of $2,886.05, and judgment was rendered thereon according to said findings as follows:

"That said Frank J. Boudinot, and the sureties upon his bond, as administrator of said estate, were obligated to said heirs in the amounts set forth, and adjudged and decreed that said administrator pay off and discharge said obligations."

As stated before herein, this judgment is final. Sec- tion 6190, Rev. Laws 1910, referring to the jurisdiction of the county court, provides:

"The proceedings of this court are construed in the same manner, and with like intendments, as the proceed- ings of courts of general jurisdiction, and to its records, orders, judgments and decrees, there are accorded like force, effect and legal presumption as to the records, orders, judgments and decrees of district courts."

The judgment, being final, is conclusive in this action, not only as to the administrator, as principal, but also as to the sureties on his bond. The current of authorities is almost unbroken that final settlements of the administra- tion, when made by an executor or administrator in pur- suance of statutory requirements, are conclusive as to all matters therein directly adjudicated. In *Greer et al. v. McNeal et al.*, 11 Okla. 526, 69 Pac. 893, quoting from the

first two paragraphs of the syllabus, we find the following:

"The sureties on an administrator's bond are bound to the extent to which their principal is bound.

"The sureties upon an administrator's bond are, in the absence of fraud, concluded by the decree of the probate court, duly rendered upon a final settlement and accounting by their principal, as to the amount of the principal's liability, although the sureties on the bond are not parties to the accounting."

And in the body of the opinion Judge Hainer refers to, and quotes with approval, numerous authorities on the same subject as follows:

"Judge Woerner, in his late work on the American Law of Administration, section 255, states the general rule as follows: 'The liability of a surety on an administrator's bond is coextensive with the liability of the principal in the bond. The refusal or neglect of the principal to obey or comply with the judgment or decree of a court of competent jurisdiction constitutes a breach, rendering the sureties liable, and they are bound and concluded by such judgment against the principal, unless, of course, there was collusion or fraud between the principal and those who seek satisfaction out of the sureties, which must be established in a direct proceeding.'

"In *Stovall v. Banks*, 10 Wall. 583 [19 L. Ed. 1036], the Supreme Court of the United States, in passing upon this question, said: 'Sureties in a bond are bound to the full extent to which their principal is bound. A surety cannot attack collaterally a decree made against an administrator, for whose fidelity to his trust he has bound himself.' Mr. Justice Strong, in the course of the opinion, used the following language: 'It has been argued on behalf of the defendants in error that the decree of the superior court, if admitted, would have been only *prima*

22—55

*facie* evidence against the sureties in the bond. Were that conceded, it would not justify the exclusion of the evidence. But the concession cannot be made. The decree settled that the administrator of the intestate, Alfred Eubanks, held in his hands sums of money belonging to the equitable plaintiffs in this suit, as distributees of the intestate's estate, which he had been ordered to pay over by a court of competent jurisdiction, and the record established his failure to obey the order. Thereby a breach of his administration bond was conclusively shown. Certainly the administrator was concluded. And the sureties in the bond are bound to the full extent to which their principal is bound.'

"In *Scofield v. Churchill et al.*, 72 N. Y. 565, it was held that, in the absence of fraud or collusion between the executor and legatee, the decree of the surrogate was conclusive upon the sureties. Mr. Justice Miller in the course of the opinion said: 'It cannot be denied that a breach of this condition has occurred within the letter of the bond, and the positive undertaking of the sureties has become fixed and operative by the surrogate's decree. In the absence of fraud or collusion between the executor and the legatee, the decree of the surrogate is conclusive upon the sureties. It binds the principal and the sureties alike, and cannot be impeached in a collateral proceeding. While the most solemn judgments do not conclude those who are neither parties nor privies, yet, when an obligee undertakes the payment of a judgment which may be recovered against his principal, he cannot escape the effect of such judgment when recovered. He has bound himself to pay, and is indebted for the amount of the judgment when recovered, without regard to its legal merits. Such is the nature of his contract, and he must abide and stand by it, irrespective of the consequences. He cannot go behind it, or allege that it was erroneous and embraced more than was intended. The decree is final as to the indebtedness of the estate, and the obligation of the executor to pay, and the sureties cannot go back of such judgment. *Thayer v.*

*Clark,* 4 Abb. Dec. [N. Y.] 391; Id. [N. Y.] 48 Barb. 243; *People v. Downing,* 4 Sandf. [N. Y.] 189; *Baggott v. Boulger,* 2 Duer [N. Y.] 179.'

"In *Deobold v. Oppermann,* 111 N. Y. 684, 19 N. E. 94, the New York Court of Appeals said: 'The sureties were bound by the surrogate's decree reversing the order of discharge, though not parties thereto, in the absence of collusion between the administratrix and the distributees or creditors of the estate.'

"In *Kenck v. Parchen* [22 Mont. 519] 57 Pac. 94 [74 Am. St. Rep. 625], the Supreme Court of Montana, in passing upon this subject, said: 'A judgment against an administrator in a probate proceeding determining the amount of his indebtedness to the estate is conclusive as against the sureties, and cannot be inquired into collaterally.' And in *Botkin v. Kleinschmidt* [21 Mont. 1] 52 Pac. 563 [69 Am. St. Rep. 641], the same court declared that: 'The sureties on a guardian's bond are bound by a judgment against their principal determining the amount of his indebtedness to the estate, though not parties to such suit,' and, 'a claim that too much interest was included in a judgment ascertaining the amount of a guardian's indebtedness cannot be inquired into in an action on his bond.'

"In *Thompson v. Dekum* [32 Or. 506] 52 Pac. 517, the Supreme Court of Oregon thus states the rule: 'A judgment against the executor on the final settlement is conclusive on his sureties, in the absence of fraud or collusion.'

"In *Meyer v. Barth* [97 Wis. 352] 72 N. W. 748 [65 Am. St. Rep. 124], the Supreme Court of Wisconsin, in a recent case, has decided that: 'Sureties upon a probate bond are, in the absence of fraud, concluded by the decree of the proper court, rendered upon an accounting by their principal, as to the amount of the principal's liability, even though the sureties be not parties to the accounting.'

"The Supreme Court of Illinois, in *Nevitt v. Woodburn* [160 Ill. 203], 43 N. E. 385 [52 Am. St. Rep. 315],

states the rule as follows: 'In the absence of fraud or collusion, sureties on administration bonds are bound by adjudications against their principal as to his account with the estate, though not parties thereto.'

"It must therefore follow that the judgment of the probate court that Pentecost was indebted to the estate in the sum of $2,403.33 on July 27, 1897, was final and conclusive, and could not be collaterally attacked by the sureties in an action upon the administrator's bond which is the subject of this controversy."

One of the latest opinions on this subject was by our court, in which one of the plaintiffs in error was a party, *Southern Surety Company v. Burney*, 34 Okla. 552, 126 Pac. 748, 43 L. R. A. (N. S.) 308, in which it is said:

"Sureties on a guardian's bond are, in the absence of fraud, concluded by the decree of the county court, duly entered on a hearing on an accounting or final settlement, as to the amount of the principal's liability, although the sureties are not parties to the accounting."

A very clear statement of the proposition is found in *Irwin, Administrator, v. Backus et al.*, 25 Cal. 214, 85 Am. Dec. 125, as follows:

"In an action against the sureties on an administrator's bond for a breach of the bond by the principal, the proceedings taken in the probate court in passing on an account rendered by the administrator, and a decree rendered therein directing the administrator to pay over a sum found remaining in his hands, are admissible in evidence against the sureties, although the sureties were not parties to the same."

"Such decree is equally conclusive upon the administrator and his sureties; and upon the refusal of the administrator to obey the same, liability of the sureties attaches, and they cannot go behind the decree to inquire into the merits of the matter therein passed on."

The next contention of counsel is that the United States Court had no jurisdiction to appoint such administrator. We cannot agree with counsel in this contention. The administrator made a written application to the court as such for an order directing the Indian agent to turn the funds over to him as such administrator. He entered into a bond as such. He received the funds as administrator, and now, when it comes to requiring him to account for these funds, he should not be permitted to deny that he was such administrator. Nor will he be permitted to deny that there was any legal authority or law permitting or requiring him to give the additional bond. He gave the bond and received the money on the strength of it. He will not be permitted to deny his authority at this late date under these circumstances.

The case should be affirmed in all particulars.

By the Court: It is so ordered.

---

On motion for leave to file second petition for rehearing. Motion denied.

Opinion by ROBBERTS, C. This case is now before us on motion for leave to file a second petition for rehearing; the original having been overruled. Counsel in their brief in support of this motion contend that the decision of the court wherein it holds that "the administrator, for the purpose of obtaining certain funds claimed by him at the time to belong to the estate, having entered into a bond under the order of the court, and in pursuance of, and on the strength thereof, received the money involved as such administrator, will not be permitted to deny his authority to receive said money, nor will the surety on his bond be

permitted to deny that there was any legal authority or law permitting or requiring him to give such bond," is without authority, and not supported by the decisions.

In the case of *United States, to Use of Hine, et al. v. Morse et al.*, 218 U. S. 493, 31 Sup. Ct. 37, 54 L. Ed. 1123, 21 Ann. Cas. 782, in the second paragraph of the syllabus, we find the following language, which, to our mind, fully supports the doctrine of the instant case:

"The validity of a decree for the sale of an infant's real estate for purposes of reinvestment, and of the order appointing a trustee to make the sale, and of the bond reciting the due appointment of such trustee, executed to secure the faithful discharge by him of his duties, is not open to question by one who voluntarily became a surety upon the bond, thereby enabling his principal to obtain the proceeds of the sale."

In the second paragraph of the syllabus of *Anderson v. Anderson*, 45 Okla. 653, 146 Pac. 709, will be found the following:

"Where a guardian executed the bond required by Rev. Laws 1910, sec. 6564, and received the proceeds of the sale of land for his ward, and fails to turn over the same to his successor in office after settlement with the county court, and after he is ordered so to do by the court, he is estopped, in a suit on the bond against himself and his surety, to say that the court had no jurisdiction over the property, and to repudiate the trust and set up title thereto in himself. His surety is also estopped to set up title thereto in the guardian."

Under these authorities it is plain that the contention of counsel cannot be sustained, and therefore the motion for leave to file a second petition for rehearing is without merit, and should be denied.

By the Court: It is so ordered.